## HAMMOND–KNOWLTON v. HARTFORD CONNECTICUT TRUST CO. OF HARTFORD, CONN.

### No. 218.

Circuit Court of Appeals, Second Circuit.

April 5, 1937.

See, also, Hammond-Knowlton v. Eaton (D.C.) 9 F.Supp. 633.

Robert H. Jackson, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Julian G. Gibbs, Sp. Assts. to Atty. Gen., and Robert P. Butler, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for appellant.

William H. O'Hara, of Bridgeport, Conn. (Eugene D. Alexander, R. L. von Bernuth, and John F. Boyer, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Charles C. Knowles died October 12, 1924, and his administratrix filed a return for federal estate tax October 10, 1925, showing a tax of $79,686.06 against which a credit of $19,923.51 was claimed for estimated state inheritance taxes as allowable under section 301 (b) of the Revenue Act of 1924 (43 Stat. 243, 303). The balance of $59,764.55 was paid on or before October 10, ·1925. The Commissioner advised the estate it was necessary to furnish the evidence required by article 9 of Treas.Reg. 68 in respect to the state inheritance taxes for which credit was claimed. These taxes had not been paid. January 19, 1926, the estate requested a six months' extension of time to submit proof of payment of the state tax. It was advised to take the matter up with the internal revenue agent and give him proof at the final conference or, if it was not then complete, to forward it to the Bureau as promptly thereafter as possible. The Commissioner made a final audit of the return October 21, 1926, and notified the estate of a correction in the value of certain securities. In the audit there was no allowance for the item of state inheritance taxes then unpaid. Section 322 (b) of the Revenue Act of 1926, 44 Stat. 9, 85, 26 U.S.C.A. § 410 note, provided for a retroactive reduction in the rates for estate taxes under the Revenue Act of 1924 and section 325 thereof (44 Stat. 87) for a refund, without interest, of any estate tax theretofore paid under the 1924 act in excess of the tax under the new rates. In the final audit, October 21, 1926, reductions accordingly were made. In this report the tax due was stated to be $59,155.37, leaving an overassessment of $609.04 for which it was recommended that a claim for refund be filed. It was not until October 26, 1931, that the administratrix forwarded to 'the Commissioner a document labeled, "Supplemental data on audit of Return, Evidence for Credit and Return," claiming a refund of $20,742.32 for state inheritance taxes and submitting the requisite proof of payment. The estate had paid $72,372.21 to the State of Connecticut April 12, 1927, and the bal-

ance of $278.78, October 16, 1930. The Commissioner treated the document as an original claim for refund and rejected it July 6, 1932, because it had not been filed within four years after the payment of the taxes sought to have refunded. He later refused to reopen the claim for the same reason. This suit was brought March 1, 1933.

The court below held that the overassessed sum of $609.04 was not refundable because no timely claim had been filed. From that determination no appeal has been taken. The appellee recovered $14,-788.88 representing the statutory credit of 25 per cent. allowable by section 301 (b) of the 1924 Act. The action was considered as one for overpayment based upon the failure to allow credit for state inheritance taxes, and it was held that the claim for credit made at the time of the filing of the estate tax return constituted a timely claim within section 3226 and section 3228 of the Revised Statutes, as amended (26 U.S.C.A. §§ 1672–1673, 1433).

 Such a claim for credit, however, is not of the kind contemplated by section 3228 which says: "All claims for the refunding or crediting of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected * * * or of any sum alleged to have been excessive or in any manner wrongfully collected must * * * be presented to the Commissioner [of Internal Revenue] within four years next after the payment of such tax * * * or sum." 26 U.S.C.A. § 1433. This section therefore refers to the crediting *of* a federal tax illegally collected, not to the crediting *on* a federal tax of a payment made or to be made to a state. If the allowance of a credit results in an overpayment, a claim for refund must be filed pursuant to Article 9, Regulation 68: "Where credits are allowed, they will apply against any unpaid tax, and if there then remains an amount not so applied, the executor should file a claim for the refund of the amount of the Federal estate tax by which the credit exceeds the unpaid tax, or if the entire Federal tax has been paid a claim for refund should be filed for such portion thereof as results from the allowance of the credit." So also if a credit is disallowed, resulting in an overpayment, a claim for refund must precede suit; and section 3228

prescribes the time within which it must be done. The appellee did not observe this provision, and the letter of December 26, 1931, if considered as a claim for refund, was too late.

 The credit for state taxes claimed in the return could not be allowed by the Commissioner until payment thereof was made and the requisite proof submitted to him. Though there was no formal disallowance of the credit in the final audit of October 21, 1926, it was omitted from the computation of the tax. This again was correct. Article 9 of Reg. 68 permits the taxpayer to claim a credit based on "an estimated amount of any such taxes [estate, inheritance etc.] for which the estate will ultimately be entitled to a credit * * *." But this estimated credit is "subject to the approval of the Commissioner upon audit of the return * * *." If the audit of October 21, 1926, constituted a disallowance of the claimed credit, nevertheless the Commissioner was within his rights in so doing. At that time the appellee had not submitted the documents and evidence required by the regulation. Moreover, the state taxes had not been paid and section 301 (b) refers to inheritance taxes which are "actually paid to any State."

 On April 12, 1927, $72,372.21, substantially the entire state tax, was paid. Yet the claim for refund was not entered until December 26, 1931, more than four years after payment of the federal tax or after the date of final audit. A timely claim for refund is a condition to the maintenance of an action for the recovery of federal taxes. Rev.Stat. §§ 3226, 3228, as amended (26 U.S.C.A. §§ 1672–1673, 1433); Rock Island, A. & L. R. R. v. U. S., 254 U.S. 141, 41 S.Ct. 55, 65 L. Ed. 188; Moses et al. v. U. S. (C.C.A) 61 F.(2d) 791, cert. den. 289 U.S. 743, 53 S.Ct. 689, 77 L.Ed. 1490.

 We may consider the overpayment as having been made October 21, 1926. On that date the Commissioner submitted his final audit, making adjustments corresponding with the reduction of rates authorized in the 1926 Act, and disallowing the claimed 25 per cent. credit—which would in any event have to be readjusted to correspond with the reduced federal tax. Viewing the matter retrospectively, the overpayment is equal to the credit for the state taxes ultimately paid. If

October 21, 1926, is the date of overpay-·ment it is clear that the claim for refund made by the appellee October 26, 1931, was not timely.

Since section 301 (b) of the 1924 Act refers to credit for taxes "actually paid," it may be reasonably assumed that the overpayment or unlawful collection, if any, could not possibly exist until the date of payment. It is true that Article 9 of Reg. 68 permits a claim for an estimated credit prior to that time, but the right of the taxpayer to a credit is conditioned upon payment. On April 12, 1927, the appellee paid $72,372.21 in taxes to the State of Connecticut, all but $278.78 of the total tax paid. Presumably the appellee could thereupon have filed a claim for refund for the amount of overpayment corresponding to the credit due upon the state taxes paid. In any event if April 12, 1927, be the date of overpayment, again no timely claim for refund was submitted.

The final payment of state taxes, viz., $278.78, was made October 16, 1930. Article 9 of Reg. 68 provides that, before the allowance of credit, proof of the property in respect to which taxes are imposed and the amount of taxes paid must be submitted to the Commissioner. If we take this to mean that the regulation contemplates actual and complete payment and settlement of the entire state tax, then the date of final payment herein would presumably be the date of overpayment or unlawful collection, and the period prescribed by section 3228 would be determined accordingly. But though we have thus far considered the action as one based on overpayment or unlawful collection, it is impossible to carry that theory further. In order to find an unlawful collection it would be necessary to indulge in the unacceptable fiction that final payment of the state tax in 1930 rendered illegal ab initio the federal tax collected in 1925 and audited in 1926 which corresponds to the credit as ultimately determined. In reality it is only the conduct of the Commissioner in disallowing the credit which has affected the appellee. Since this is so, the action against the collector cannot be maintained. Cf. U. S. v. Reeves Bros. Co., 83 F. (2d) 121 (C.C.A.6); Gans S. S. Line v. Bowers, 82 F.(2d) 181 (C.C.A.2), cert. den. 298·U.S. 676, 56· S.Ct. 940, 80 L.Ed. 1397; Moses v. U. S., supra.

Furthermore, it is obvious that the appellee would be no better off if we were to consider this action as one to recover a refund authorized by section 325 of the 1926 Act (44 Stat. 9, 87); that is, one not based upon an unlawful collection and therefore not within the time limitation of section 3228. The fact still remains that the refund, which would relate to the disallowance of the credit, must trace its basis to the conduct and acts of the Commissioner, not of the Collector.

Judgment reversed.