## CENTRAL HANOVER BANK & TRUST CO. v. UNITED STATES.

District Court, S. D. New York.
May 22, 1946.

Barr, Robbins & Palmer, of New York City (William G. Barr of New York City, of Counsel), for plaintiff.

John F. X. McGohey, U. S. Atty. of New York City for the Southern District of New York, (Samuel Rudykoff, Asst. U. S. Atty., of New York City, of counsel), for defendant.

LEIBELL, District Judge.

Plaintiff, as executor of the will of Harriette M. Arnold, deceased, brings this suit against the United States under Title 28 U.S.C.A. § 41(20) to recover the sum of $4,490.23 and interest from March 15, 1937, alleged to have been erroneously assessed and collected from the decedent, as income tax for the year 1936. The facts have been stipulated. The legal question presented involves the applicability of Section 3801 of the Internal Revenue Code [Tit. 26 U.S. C.A. Int.Rev.Code, § 3801, in particular subdivision (b) (1) and (b) (5) thereof] relating to adjustments permitted to correct an error, where the correction would otherwise be prevented by the ordinary statute of limitations of the internal revenue laws.

From the stipulation of facts it appears that Harriette M. Arnold, between 1925 and 1932 inclusive, in a series of transactions involving purchases, stock dividends, split-ups and a readjustment of par values, had acquired 6,490 shares of Electric Bond & Share Company at an aggregate cost of $426,976.01 which she continued to hold until 1935. In 1935 she sold 1990 shares for $13,455.56 and in 1936 she sold the balance of 4,500 shares for $90,994.20. In her income tax return for 1935 she reported the cost price of the 1,990 shares as $130,921.77, which was arrived at by multiplying the average cost per share of the 6,490 shares by 1,990; and that her loss on the sale was $117,466.31. When she filed her income tax for 1936 she used the same average cost per share in determining the cost of the 4,500 shares sold by her in 1936 and she reported that her loss on the sale was $205,060.40. Her income tax return for the year 1935 was filed March 15, 1936, and the last quarterly installment of her taxes based on the return was paid December 15, 1936. Her income tax return for the year 1936 was filed March 15, 1937, and the last quarterly installment of her tax based thereon was paid December 15, 1937. She was a very wealthy woman with a large income, as appears from the income tax of $223,465.26 which she paid in 1936 on her 1935 income, and the income tax of $379,-079.69 which she paid in 1937 on her 1936 income.

On the first audit of her 1935 return the Commissioner of Internal Revenue assessed a deficiency tax of $1,355.40 which the taxpayer paid January 6, 1939. At that time he accepted the taxpayer's figures showing the loss on the sale of the 1,990 shares of Electric Bond and Share stock. Apparently her 1935 tax return was again audited and the Commissioner by a 90-day audit letter of March 7, 1939, determined a deficiency tax liability of $6,109.52. In arriving at that figure and in determining her adjusted net income the Commissioner adjusted the reported loss on the sale of the 1,990 shares of Electric Bond and Share Company according to his letter as follows:

| | |
|---|---|
| 1990 shares cost | $19,681.10 |
| Selling price shown on return | 13,455.46 |
| Loss | $ 6,225.64 |

The taxpayer in her 1935 and 1936 returns used the average cost per share, which was the same for each return. In determining her loss on the sale of the 1,990 shares in 1935 the Commissioner, on reaudit, applied the first-in, first-out rule.

The taxpayer instituted proceedings in the Board of Tax Appeals and on the written stipulation of the parties an order therein was entered April 18, 1940, deciding that there was a deficiency in her Federal income tax for the year 1935 in the sum of $2,226.70, a sum which she paid on April 10, 1940. In connection with the proceeding before the Board of Tax Appeals the cost of the 1,990 shares was found to be $21,830.30, using the first-in, first-out rule. As a result of the reaudit of the 90-day letter of March 7, 1939, and the proceeding in the Board of Tax Appeals, the $2,000 loss reported in her 1935 return as a deduction was disallowed and additional capital net

gain was added to her reported income for 1935.

Decedent's income tax return for the year 1936 was also reaudited and on January 10, 1939, she was refunded the sum of $2,106.39. Thereafter and on May 12, 1939, she paid the Collector $3,306.89 which, on a further audit, was assessed against her as a deficiency tax in respect to her income for the year 1936. But in the auditing and reauditing of her 1936 income tax return the cost basis of the 4,500 shares of Electric Bond and Share Company stock, used by her, was not readjusted to show the cost of said 4,500 shares as the difference between the total cost of the 6,490 shares and the adjusted cost basis of the 1,990 shares. If that had been done her loss on the 4,500 shares sold in 1936 would have been increased by the same amount by which the Commissioner had reduced her loss on the 1,990 shares sold in 1935.

It is clear that in applying the first-in, first-out rule to determine the taxpayer's loss on the sale of the 1,990 shares in 1935, the Commissioner had to determine which were the first 1,990 shares acquired by the taxpayer and their cost. It necessarily followed that the balance of the total cost of the 6,490 shares would represent the cost of the 4,500 shares sold in 1936. Under the first-in, first-out rule, it was impossible to determine the cost to be allotted to the 4,500 shares sold in 1936 until the cost of the 1,990 shares was determined. The determination of the cost of the 1,990 shares made in the Board of Tax Appeals proceedings, which adopted the position of the Commissioner, made it necessary to redetermine the cost of the 4,500 shares, erroneously reported in the 1936 return of the taxpayer.

On July 20, 1940, the taxpayer filed with the Collector a claim for refund of $7,802.-39 of the 1936 income tax paid by her. The claim was based on her right to a readjustment of the reported cost basis of the 4,500 shares sold in 1936. and thereby to increase the amount recognizable as her loss on that sale, which in turn would reduce the amount of capital gain reported in her 1936 return. (She had had capital gain from the sale of other property during that year.)

In her claim for refund she stated its basis as follows: "Under date of April 18, 1940, a decision was entered by the United States Board of Tax Appeals in the case of Mrs. Harriette M. Arnold, Petitioner v. Commissioner of Internal Revenue, Respondent, Docket No. 98806 [41 B.T.A. 1330], for the year 1935, which decision has now become final. This decision required deponent to use a cost base of $21,830.30 for 1,990 shares of Electric Bond and Share Company stock sold during such year, instead of $130,921.77 as claimed in deponent's original Return. During 1936, deponent sold the balance of her holdings of Electric Bond and Share Company stock, and an illegal tax has been collected for such year by reason of the fact that the cost base not allowed in 1935 properly belongs in 1936. It, therefore, follows that the period within which a claim for refund of taxes illegally collected is, under the provisions of Section 3313 of the Internal Revenue Code [26 U.S. C.A. Int.Rev.Code, § 3313], four years from the time the original Return was filed by deponent, or prior to March 15, 1941, and it is contended that this claim has been timely filed. It is also contended that this claim is timely filed under the provisions of Section 3801 of the Internal Revenue Code which provides mitigation of effect of limitation and other provisions in income tax cases for the reason that the decision of the United States Board of Tax Appeals for the year 1935 is now final and there is adopted in such final determination a position maintained by the Commissioner of Internal Revenue with respect to the cost base of deponent's holdings of Electric Bond and Share Co. stock, which results in a serious adverse effect for the year 1936 by reason of the fact that the cost base not allowed in 1935 has also not been allowed to deponent in 1936 when the balance of her holdings of such stock was sold."

On January 22, 1944, the Internal Revenue Agent wrote the taxpayer as follows: "I enclose a copy of the report of the third supplemental examination of your income tax returns for the year 1936, in connection with your claim for a refund of $7,802.39. After consideration by this office, the following adjustment of your tax

liability appears to be warranted, for the reasons stated in the report:

and the position maintained by the Commissioner in that proceeding is inconsistent

| Year 1936 | Liability | Assessed | Overassessment |
|---|---|---|---|
| Income Tax | $372,483.07 | $380,280.19 | $7,797.12 |
| Barred by Statute of Limitations............................ | | | 4,490.23 |
| Overassessment Allowable | | | $3,306.89." |

The "report" referred to in the letter contained the following reasons for the ruling recommended and made: "Claim was not filed until July 22, 1940, two years, 7 months and 7 days after Dec. 15, 1937 when the last quarterly installment of total original tax for 1936 was paid, and one year, two months and 10 days after May 12, 1939 when additional tax of $3306.89 was paid for 1936. Amount allowable as an overassessment is $3,306.89 paid within two year period prior to date of filing of return. Allowance of any additional amount is barred because it was not paid within the two year period prior to date of filing of claim."

§ 322(b) (1) of the Revenue Act of 1936, 26 U.S.C.A. § 322(b) (1), relates to the period of limitation on the allowance of claims for refunds and credits. It provides: "Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later."

This section would apply and bar any recovery in this suit unless § 3801(b) permits a readjustment. Section 3328 of the Revised Statutes, Title 26 U.S.C.A. Int.Rev. Code, § 3313, a four year statute, does not apply to claims for refund of income taxes, in view of the specific provisions of § 322 (b) (1) quoted above. I have concluded that § 3801(b) does mitigate the effect of the limitation contained in § 322(b) (1), because the determination of the Board of Tax Appeals as to the cost of the 1,990 shares sold in 1935, established also the basis for the cost in respect to the 4,500 shares sold at a loss in 1936. The determination of the Board of Tax Appeals adopted the position maintained by the Commissioner (the first-in, first-out rule);

with the non-recognition of an increase in the taxpayer's loss on the sale of the 4,500 shares in 1936, over the amount reported and audited.

The Commissioner's ruling in rejecting the claim for refund finds in effect that the claim for refund on her 1936 tax is correct in its calculations, but barred in part by the Statute of Limitations. The Commissioner's ruling on the taxpayer's claim for the refund recognizes the equities supporting her claim for refund of $7,797.12. He has refunded so much of her claim as represented the deficiency assessment of $3,306.89 which she had paid on her 1936 income tax on May 12, 1939, because that sum had been paid within a period of two years prior to the filing of her claim for refund. I believe that the taxpayer was entitled to an adjustment that would refund also the balance of $4,490.23, which was saved to her from the bar of § 322(b) (1) by § 3801(b) (5) which provides:

"§ 3801. Mitigation of effect of limitation and other provisions in income tax cases.

\*   \*   \*   \*   \*   \*

"(b) Circumstances of adjustment. When a determination under the income tax laws—

\*   \*   \*   \*   \*   \*

"(5) Determines the basis of property for depletion, exhaustion, wear and tear, or obsolescence, or for gain or loss on a sale or exchange, and in respect of any transaction upon which such basis depends there was an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition of gain or loss to, the taxpayer or any person who acquired title to such property in such transaction and from whom mediately or immediately the taxpayer derived title subsequent to such transaction—and, on the date the determination becomes final, cor-

rection of the effect of the error is prevented by the operation (whether before, on, or after May 28, 1938) of any provision of the internal-revenue laws other than this section and other than section 3761 (relating to compromises), then the effect of the error shall be corrected by an adjustment made under this section. Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the amount of the adjustment would be refunded or credited in the same manner as an overpayment under subsection (c)) or by the taxpayer with respect to whom the determination is made (in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under subsection (c)), which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or non-recognition, as the case may be. In case the amount of the adjustment would be assessed and collected in the same manner as a deficiency, the adjustment shall not be made with respect to a related taxpayer unless he stands in such relationship to the taxpayer at the time the latter first maintains the inconsistent position in a return, claim for refund, or petition (or amended petition) to the Board of Tax Appeals for the taxable year with respect to which the determination is made, or if such position is not so maintained, then at the time of the determination."

Exhibit B annexed to the petition herein is the third supplemental report, in respect to the taxpayer's 1936 return and her claim for refund. That report shows that in determining the cost of the 4,500 shares sold in 1936 the agent listed and figured in detail the cost of the total of 6,490 shares as $426,976.01, from which he deducted the cost of the 1990 shares. I quote the following from his report:

After giving effect to that loss under the appropriated provision of the Act the result was a decrease of $12,104.76 "in net capital gain", from $27,385.33 to $15,280.57, and the taxpayer's total tax assessable was determined to be $372,483.07 against a tax previously assessed of $380,280.19, showing an overassessment of $7,797.12. Of that amount, $4,490.23 was held to be barred by the Statute of Limitations leaving an "overassessment allowable" of $3,306.89, which was refunded.

All of these figures show how the cost of the 4,500 shares sold in 1936 was so intertwined with the cost of the 1,990 shares sold in 1935 that litigation in the Board of Tax Appeals determining the cost of the 1,990 shares, necessarily fixed the cost of the remaining 4,500 shares and in equity required a correction of the amount of the taxpayer's loss on said 4,500 shares. The taxpayer was right in her contention that the Commissioner was successful in having his contention or position, that the first-in, first-out rule applied, accepted by the Board of Tax Appeals as the basis for the determination of the cost and loss on the 1,990 shares. When the Board's determination of April 18, 1940, became final for the 1935 return, correction of the error as to the loss in 1936 on the 4,500 shares, as reported was barred by § 322(b) (1) of the Internal Revenue Act, above quoted. It follows that this is a situation where § 3801(b) (5) is applicable and the taxpayer was entitled to an adjustment under that section that would have resulted in a refund of the full amount of her claim.

I am adopting as the Court's findings of fact herein the stipulation of facts, dated August 30, 1945, received as Exhibit 1 on the trial February 28, 1946. As a conclusion of law, I rule that the petitioner-plaintiff is entitled to judgment against the defendant United States of America for

| "6,490 shs. | Electric Bond & Share Co. cost | $426,976.01 |
| 1,990 " | at cost of $10.97 per sh. out of original lot of 2,036 shares after adjustment. | 21,830.30 |
| 4,500 " | balance remaining—cost | 405,105.15 |
| 4,500 " | sold in 1936 for | 91,750.00 |
| | Loss resulting from sale | 313,355.15" |

the amount sued for, $4,490.23, with interest from December 15, 1937. On the question of interest see Title 26 U.S.C.A. Int.Rev. Code, § 3771; Blair v. United States ex rel. Birkenstock, 271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983; and Title 28 U.S.C.A. § 284(b); Aluminum Co. of America v. United States, 30 F.Supp. 686, 90 Ct.Cl. 173, Id., Ct.Cl., 32 F.Supp. 767.