**316**

JONES, Collector of Internal Revenue, v.
LIBERTY GLASS CO.
No. 3394.

Circuit Court of Appeals, Tenth Circuit.

Jan. 21, 1947.

HUXMAN, Circuit Judge, dissenting.

S. Walter Shine, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., J. Louis Monarch and Frank J. Ready, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellant.

Earl Foster, of Oklahoma City, Okl., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The Liberty Glass Company, a corporation, hereinafter referred to as the taxpayer, instituted this action against the Collector of Internal Revenue for the District of Oklahoma, hereinafter referred to as the collector, to recover the sum of $1053.49, with interest, on the ground that it had been paid as income and excess profits taxes pursuant to an erroneous and illegal deficiency assessment. The cause was submitted to the court on stipulated facts. It was stipulated that the taxpayer filed its return for the year 1938 and seasonably paid the taxes shown therein; that two separate examinations were subsequently made of the return, each resulting in a deficiency assessment which was paid; that the last assessment failed to allow any credit for money used by the taxpayer during the taxable year to retire indebtedness; that such assessment was paid on March 8, 1941; that claim for refund was filed on March 30, 1944; and that the claim was rejected on the ground that it was not filed within the time required by law. It was further stipulated that if the taxpayer was entitled to recover, the judgment should be for $1053.49, with interest. The court entered judgment for the taxpayer, and the collector appealed.

The question presented is whether it was necessary that the claim be filed within two years after payment, as required by section 322 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 322, or within four years after the payment, as required by section 3313 of the Code, 26 U.S.C.A. Int.Rev.Code, § 3313. If the former, it was filed too late; if the latter, it was within time. Section 322 provides in material part that in case of an overpayment

of any tax imposed by the chapter, the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax then due from the taxpayer.; that any balance shall be refunded to the taxpayer; and that a claim for the credit or refund must be filed within three years after the filing of the return or within two years after payment of the tax. Section 3313 provides in material part that all claims for the crediting or refunding of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, * * * except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes, must be presented to the Commissioner within four years after payment of the tax.

■ By its express terms, section 322 has application to claims for overpayment of income, war-profits, or excess-profits taxes. It was intended to govern overpayments resulting from errors occurring in the preparation of the return, or in other somewhat similar circumstances. And by its express language, section 3313 has application to claims for the crediting or refunding of payments of internal revenue erroneously or illegally assessed. It was intended to govern where a deficiency assessment is erroneously or illegally made under pretended color of legal authority. The claim submitted by this taxpayer was not for a refund of an overpayment arising out of an error or mistake in the preparation of the return. Nothing of that kind entered into the situation. It was for money paid in liquidation of a deficiency assessment erroneously and illegally made under pretended color of legal authority. Therefore the time for the filing of the claim was fixed by section 3313. Huntley v. Southern Oregon Sales, Inc., 9 Cir., 102 F.2d 538; United States v. Lederer Terminal Warehouse Co., 6 Cir., 139 F.2d 679; Pennsylvania Co. for Insurances on Lives and Granting Annuities v. United States, 3 Cir., 152 F.2d 757, affirming D.C., 59 F. Supp. 667. See also Olsen v. United States, D.C., 32 F.Supp. 276; Godfrey v. United States, D.C., 61 F.Supp. 240; Noble v. Kavanagh, D.C., 66 F.Supp. 258.

■ Conceding that the cases just cited are against his contention and expressly challenging their correctness, it is the argument of the collector that by the exceptive provision contained in section 3313 a claim of this kind is excluded from that section, and that the time for the filing of such a claim is governed by section 322. Strong reliance is placed upon the legislative history of the two sections to sustain the contention. One rule for the construction of statutes is that where doubt exists as to the meaning of words used in a statute, the legislative history may be taken into consideration in resolving the doubt. Fairport, Painesville & Eastern Railroad Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446; United States v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356. But that is only one rule, and it may be invoked only in case of doubt, ambiguity, or uncertainty in respect of the meaning of the language used. And the plain meaning of a statute cannot be overcome by resort to the legislative history leading up to its enactment. Gemsco, Inc., v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921. There is no need to detail the extended legislative history on which the collector relies. It is enough to say that we have examined it with care and we do not think it necessarily supports the contention; and further, that it falls short of overcoming the fairly plain language used in the two sections of the statute.

■ ■ Another well recognized rule lends its strength to the conclusion that the time for the filing of a claim of this kind is governed by section 3313, not section 322. The case of Huntley v. Southern Oregon Sales, Inc., supra, was decided almost eight years ago, and the later cases citing it with approval and reaching the same conclusion followed. During that period Congress convened from time to time, has enacted revenue legislation, and by section 5 of the Act of July 31, 1945, 59 Stat. 511, 523, has amended section 322, all without indicating in any manner its disapproval of the judicial interpretation placed upon the two sections. That in composite effect should be regarded as Congressional approval and adoption of the interpretation placed by the

courts upon the two statutes. Sessions v. Romadka, 145 U.S. 29, 12 S.Ct. 799, 36 L. Ed. 609; Manhattan Properties, Inc., v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824; United States v. Elgin, Joliet & Eastern Railway Co., 298 U.S. 492, 56 S.Ct. 841, 80 L.Ed. 1300; State of Missouri v. Ross, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46; Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 613, 616, 59 S.Ct. 675, 83 L.Ed. 1071. True, none of the cases construing the two sections was by the Supreme Court of the United States, but the rule of uniform judicial construction of a statute over a long period of time being regarded as acceptable to the legislative arm of the government has appropriate application where legislation dealing with the general subject matter has been enacted and the particular statute has been amended, without any action or expression indicating legislative disapproval of the judicial construction, even though the construction was by circuit courts of appeal and district courts of the United States. Manhattan Properties, Inc. v. Irving Trust Co., supra.

The judgment is affirmed.

HUXMAN, Circuit Judge (dissenting). I find myself unable to agree with the conclusions of my associates. I find much more difficulty in concluding than does the majority that the language of Section 322 [1] clearly limits its application to so-called overpayments of income, war profits, or excess profits taxes, and that the language in Sec. 3313 clearly indicates that it governs all other applications for refunds of all internal revenue taxes, including income taxes other than so-called technical overpayments.

Sec. 3313 providing for the recovery of internal revenue taxes wrongfully collected has been a part of the Internal Revenue Code since 1872. See 17 Stat. 257. This section is Sec. 3228 of the Revised Statutes. The section sets up the procedure for filing claims for the recovery of amounts unlawfully exacted as internal revenue taxes. Almost from the beginning of the Federal Income Tax Law, the part of the revenue law providing therefor has likewise contained a section providing for the recovery of income taxes wrongfully collected. Every such section evidences a Congressional intent to remove the proceedings for the recovery of such taxes from the provisions of Sec. 3228 and regulate the right to recovery thereof by the applicable section of the income tax law. Thus, Sec. 14(a) of the 1916 Revenue Act, 39 Stat. 772, providing for the right of recovery of such taxes, provides that the taxpayer " * * * Shall be permitted to present a claim for refund thereof notwithstanding the provisions of section thirty-two hundred and twenty-eight of the Revised Statutes; * * *." So Section 252 of the 1918 Act, 40 Stat. 1057, provides for the recovery of such taxes " * * * Notwithstanding the provisions of section 3228 of the Revised Statutes * * *." Sec. 252 of the 1921 Revenue Act, 42 Stat. 227 contains this language: "Notwithstanding any other provision of law, * * *"

Sec. 1316 of the 1921 Revenue Act, 42 Stat. 314, amended Sec. 3228 by changing the period of limitation from five years to four years, and made the amendment retroactive to all claims for refunds under the 1916, 1917 and 1918 Revenue Acts, with the exception that the amended act was not made applicable to income taxes. It contains this significant language: "This section, *except as modified by section 252*, shall apply retroactively * * *." [2] Here is a clear recognition that the right to a refund of income taxes is controlled by Sec. 252.

Section 281(a) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 62, dealt with "overpayment" of income taxes. Section 281(b) fixed the period within which claims for refunds must be filed. Section 1012 of the same act, 26 U.S.C.A. Int.Rev.Acts, page 127, again amended Sec. 3228. The language of this amended section is significant. It speaks of "All claims for the refunding or crediting of any internal-revenue tax alleged to have been er-

---

[1] Sec. 322 is for all purposes the same as former Sec. 252. In this opinion reference will be made to Sec. 252.

[2] Emphasis supplied.

roneously or illegally assessed or collected * * *." It then provides that all such claims " * * * except as provided in section 281 [which relates to income tax] * * *" must be presented. It would seem that when this section legislates with regard to all claims for taxes collected, whether erroneously assessed or collected, and then excepts from its provisions income taxes because they are provided for in Sec. 281, the exceptions being general, it meant that claims for refunds of income taxes, whether illegally assessed or collected, were provided for in Sec. 281. Construing these two sections together, it would seem logical to conclude that the word "overpayment" was used in its broad sense as meaning a payment of more than was due no matter for what cause, rather than in its narrow sense of a payment of more than was due by virtue of an error on the part of the taxpayer in filing his return.

Sec. 3228 was further amended in the Revenue Act of 1926, 26 U.S.C.A. Int. Rev.Acts, page 322, § 1112, but again there was excepted from .its provisions claims " * * * as provided in sections 284 [income tax] and 319 [estate tax] * * *."

The Act of 1928, 26 U.S.C.A. Int.Rev. Acts, page 466, § 619(c), again amended Sec 3228 with regard to the procedure for the filing of claims for refunds of internal revenue taxes, and again it excepted from its provisions refunds for income and kindred tax payments. The language in the exception clause of the 1926 Revenue Act (except as provided in Section 284 (income tax) and 319 (estate tax) ), was changed to read: "Except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes." This exception no doubt was made in this form because these additional taxes had come into existence in the meantime.

It appears to me that the natural and logical conclusion to be drawn from all of this is that throughout all this time Congress considered and understood that claims for refunds for income, war profits, excess profits, estate and gift taxes, were especially provided for in particular sections of the revenue laws, and therefore were excluded from the provisions of Section 3228, rather than to interpret the language as though it read in substance as follows: "Except in the case of overpayment of income, war profits, excess profits, estate and gift taxes, which overpayments are provided for in Section 252."

The word "overpayment" is not a word of art, but a word having a general meaning. In general, payment may be defined as a satisfaction of an obligation by the delivery of or transfer of that which is due. So, overpayment may be defined as a payment or delivery of more than is due. Whether the payment results from an error on the part of a taxpayer in making and filing his return or from erroneous assessments by the Collector when made, it is an overpayment or a payment of more than is due. Considering the language in the various Congressional enactments relating to Section 252 and 3228, it appears to me that this is the sense in which Congress used the word; that it intended that the refund of all taxes mentioned in Sec. 252 should be controlled by Sec. 252, and the refund of all other internal revenue taxes should continue to be controlled by Sec. 3228, which had been a part of the general revenue laws since 1872.

The income tax law put into force a new class of internal revenue taxes. The Revenue Act of 1921 is a general act having fourteen subtitles, relating to the collection of all internal revenue taxes. The first twelve subtitles deal with specific classes of internal revenue. It is worthy of note that of all of these, only subtitle 2, dealing with income taxes, is complete in itself. The entire Revenue Act of 1921, except subtitle 2, could be repealed and we would still have a complete statute for the assessment, levy and collection of income taxes, including a provision for refund of amounts collected in excess of what was due. If the income tax sections of the Revenue Act of 1921 constituted a separate statute, I would have no difficulty in construing Section 252 as authorizing a refund on all amounts improperly collected.

The Treasury Department understood and construed Section 252 as controlling the refund of all amounts collected in excess of

what is due. That is clearly demonstrated by the letter of Secretary Mellon to the Chairman of the House Ways and Means Committee at the time amendment of Section 252 by the Revenue Act of 1923, 42 Stat. 1504, was before the Committee. The difficulty with Section 252, as shown by the Secretary's letter, was that it required a claim for a refund to be filed within five years from the date of the return. As the Secretary pointed out, in those cases where the final determination of an additional assessment was not made for more than five years after the filing of the report, no claim for a refund could be filed therefor. To correct this, the Department had entertained claims for refunds for income taxes erroneously or illegally assessed if the claims were filed within the time fixed in Section 3228. The Secretary stated that the legality of this procedure was doubted by the Department. In other words, they were of the opinion that all such claims were properly to be filed under Section 252 but to afford the taxpayer relief they had entertained them if filed within the time provided for in Section 3228. The House Committee's report stated that the effect of the amendment to Section 252 was clearly shown by the Secretary's letter, and that the Committee concurred in the suggestion of the Secretary as to the need of making the law definite so a taxpayer who had by agreement with the Treasury permitted the time for the final assessment of taxes due from him to be made after the expiration of the five year period (in Section 252) will not be barred from making a claim for refund when the assessment is made and the taxpayer alleges that the assessment is illegal. This language can mean only that Congress understood that claims for the refund of income taxes illegally assessed were properly filed under Section 252. They were speaking of illegal assessments, not of technical overpayments, and were attempting to safeguard a taxpayer's right to recover them under Section 252. If Section 252 related only to so-called overpayments, then all this talk of amending the section to provide for claims for illegal assessments was out of place. This clearly indicates that not only the Treasury De-

partment, but also the House and Senate, construed Section 252 as controlling applications for the refund of all income taxes.

In view of this, I cannot concur in an opinion that bases the decision largely on the tenuous ground that Congress having failed to amend Section 252 since the Huntley decision,[3] we must presume that its interpretation expresses the Congressional intent. The interpretation in the Huntley case is diametrically opposed to the interpretation as contained in Secretary Mellon's letter in which the Ways and Means Committee of Congress expressly concurred.

The principle of Congressional approval of judicial interpretation of its acts by failure to take further action has a place in the judicial process. But its application is not absolute and requires the exercise of sound discretion. It is founded on the principle that Congress has knowledge of these decisions, and, having such knowledge and failing to take further steps in the matter, we may presume that it concurs in such interpretation. Whether it can be said that Congress has knowledge of the decision depends upon many factors, such as the universality with which the principle has been declared, the period of time involved, the general public interest in the particular subject, as well as the court which has decided the matter. Thus, a decision by the Supreme Court is much more likely to come to the attention of Congress than a decision by a lower court.

The Huntley opinion is the only one that has attempted an exhaustive analysis of Sections 252 and 3228. The few remaining decisions largely follow the Huntley case. It might be slightly violent to presume that any Circuit Judge had knowledge of all the decisions of the Circuit Courts dealing with various principles of law. It is much more difficult for me to presume that the Huntley decision, which is approximately eight years old and which relates to a minor detail in the administration of the income tax law, came to the attention of Congress than that it was known to all the Circuit Judges, especially so since during all that time Con-

---

[3] Huntley v. Southern Oregon Sales, 9 Cir., 104 F.2d 153.

gress was occupied with matters of greatest importance to our national existence.

For these reasons, I must respectfully dissent.