## JONES, COLLECTOR OF INTERNAL REVENUE, *v.* LIBERTY GLASS CO.

No. 71. Argued November 17–18, 1947.—Decided December 22, 1947.

*Lee A. Jackson* argued the cause for petitioner. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Caudle, Arnold Raum* and *Helen R. Carloss.*

*Earl Foster* argued the cause and filed a brief for respondent.

*Reginald S. Laughlin* filed a brief as *amicus curiae.*

MR. JUSTICE MURPHY delivered the opinion of the Court.

Our concern here is with the period of limitations applicable to the filing of claims for refund of federal income taxes. Must such claims be filed within two years after payment of the tax, as provided by § 322 (b) (1) of the Internal Revenue Code, or within four years after payment of the tax, as provided by § 3313 of the Code?

The corporate taxpayer, respondent herein, filed its income and excess-profits tax return for 1938, a return which indicated a tax liability of $1,193.25. This sum, plus a small additional assessment, was paid in 1939. A revenue agent later investigated the taxpayer's liability again, resulting in an additional assessment of $6,640.81.

Payment of this amount was made on March 8, 1941. Over three years later, on March 30, 1944, the taxpayer filed a claim for refund of $1,053.49. It was stated that the revenue agent erroneously had failed to allow certain credits for sums used by the taxpayer in 1938 to reduce its indebtedness. Reliance was placed by the taxpayer on the four-year limitation period specified in § 3313. The Commissioner of Internal Revenue rejected this claim, pointing out that § 3313 specifically exempts from its application income, war-profits, excess-profits, estate and gift taxes.

This suit was then brought by the taxpayer in the District Court to recover the amount alleged by the refund claim to be due. That court held that § 3313 was applicable and gave judgment for the taxpayer. 66 F. Supp. 254. The Tenth Circuit Court of Appeals, one judge dissenting, affirmed the judgment. 159 F. 2d 316. The problem being one of importance in the administration of the revenue laws, we granted certiorari.

Section 322 (b) (1) is to be found in Subtitle A of the Internal Revenue Code, a subtitle dealing with those taxes over which the Tax Court has jurisdiction. Such jurisdiction includes income, excess-profits, estate and gift taxes. More specifically, § 322 (b) (1) appears under Chapter 1 of the Code, pertaining to income taxes. It is concerned with overpayments of income taxes and provides quite simply that no refund shall be allowed unless a claim for refund "is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid . . . ." [1]

---

[1] The return in this case was filed in June, 1939. Since the claim was filed on March 30, 1944, no contention could be made that it was within the three-year period from the date the return was filed.

Section 3313, on the other hand, is located under Subtitle B of the Code, a subtitle devoted to miscellaneous taxes. It is in Chapter 28, which contains various provisions common to such taxes. And it is among those provisions dealing with the assessment, collection and refund of the taxes. It reads as follows: "All claims for the refunding or crediting of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes, be presented to the Commissioner within four years next after the payment of such tax, penalty, or sum. The amount of the refund (in the case of taxes other than income, war-profits, excess-profits, estate, and gift taxes) shall not exceed the portion of the tax, penalty, or sum paid during the four years immediately preceding the filing of the claim, or if no claim was filed, then during the four years immediately preceding the allowance of the refund."

The substance of § 3313 of the Code has long been a part of federal statutory law. Its ancestry can be traced back to 1872, when § 3228 of the Revised Statutes was enacted.[2] Section 3228 established a procedure for filing claims for refund of any internal revenue tax alleged to have been "erroneously or illegally assessed or collected" and created a limitation period of two years from the time the cause of action accrued, later extended in 1921 to four years from the date of payment of the tax.[3] But soon after the entry of the income tax into the federal scene in 1913, separate provision was made for the filing of claims

---

[2] Section 3228 was in the nature of a revision of § 44 of the Act of June 6, 1872, 17 Stat. 230, 257.

[3] Revenue Act of 1921, § 1316, 42 Stat. 227, 314.

for refund of income taxes "paid in excess of those properly due." Section 14 (a) of the Revenue Act of 1916 [4] was the first such provision and it made clear that § 3228 was inapplicable to claims of this nature. Section 252 of the Revenue Act of 1918,[5] followed by § 252 of the 1921 Act,[6] continued this scheme of separate treatment. These later provisions were written so as to include refund claims relating to war-profits and excess-profits taxes as well as those involving income taxes; and a limitation of five years from the date the return was due was placed on the filing of such claims. It was further specified that the procedure therein detailed was to be followed "notwithstanding the provisions" of § 3228.

Section 252, as it appeared in the 1921 Act, was then changed in 1923 [7] so as to permit claims for refund of income and profits taxes "paid in excess of that properly

---

[4] 39 Stat. 756, 772. This provided that the claim for refund might be presented "notwithstanding the provisions of section thirty-two hundred and twenty-eight of the Revised Statutes."

[5] 40 Stat. 1057, 1085.

[6] 42 Stat. 227, 268.

[7] Act of March 4, 1923, 42 Stat. 1504, 1505. In amending § 252, the Act of March 4, 1923, made mention of refunds of income taxes to withholding agents which might be made under the provisions of "section 3228 of the Revised Statutes." This was an obvious reference to the practice of the Treasury Department, admitted to be of "very doubtful legality," H. R. Rep. No. 1424, 67th Cong., 4th Sess., p. 2, of allowing a taxpayer who had permitted an additional assessment after the five-year period from the due date of the return (specified by § 252 of the 1921 Act) to file a claim for refund within four years after payment of the tax (pursuant to § 3228), even though the five-year period had elapsed. The Treasury had instituted this practice to prevent inequities which might otherwise ensue to such taxpayers, but it was without legislative sanction. It was to take care of the taxpayers who had taken advantage of the Treasury practice that the reference in question in the Act of March 4, 1923, was made. As to claims pending on March 4, 1923, which were timely filed under § 3228, but not timely under § 252, refunds to withholding agents were necessarily to be made under § 3228. This provision was not repeated

due" to be filed within two years after the tax was paid, in addition to the five-year period after the due date of the return. This change was made "so that the taxpayer who has, by agreement with the Treasury, permitted the time for the final assessment of the taxes due from him to be made after the expiration of the five-year period, will not be barred from making a claim for a refund when such assessment is made and the taxpayer *alleges that the assessment is illegal.*" [8] Amending § 252 rather than § 3228 of the Revised Statutes to accomplish this purpose was significant. It was an unequivocal indication that § 252, in speaking of claims for refund of "excess" payments of income and profits taxes, was designed by its framers to include not only those payments growing out of errors in the preparation of returns but also those payments resulting from illegal or erroneous assessments. See *Graham* v. *duPont,* 262 U. S. 234, 258.

The Revenue Act of 1924 [9] transferred the substance of the former § 252 to a new § 281. A four-year period of limitations from the date of the payment of the tax was established, a period coinciding in length with that prescribed by § 3228. The reference to the type of payments involved was recast; in place of speaking of payments "in excess of that properly due," § 281 used the simple term "overpayment." [10] And instead of stating in § 281 that its provisions should apply "notwithstand-

in subsequent legislation and it was not indicative of a legislative intent to permit income tax refund claims to be governed by § 3228 in the future.

[8] Emphasis added. H. R. Rep. No. 1424, 67th Cong., 4th Sess., p. 2; S. Rep. No. 1137, 67th Cong., 4th Sess., p. 2.

[9] 43 Stat. 253, 301.

[10] The Revenue Act of 1924, 43 Stat. 253, 296, also created a new § 272, dealing with "overpayments" of income tax installments. This spoke of overpayments in the sense of payments of "more than the amount determined to be the correct amount of such installment." This provision now exists as § 321 of the Internal Revenue Code.

ing the provisions" of § 3228 of the Revised Statutes, § 3228 itself was amended[11] to make it applicable to all claims for the refunding or crediting of any internal revenue tax "except as provided in section 281 of the Revenue Act of 1924." This placing of an exceptive clause in § 3228 was done "to remove the doubt which now exists as to whether or not the provisions of section 3228, Revised Statutes, apply in any event to income taxes."[12] In other words, the statutory drafters intended to make certain that § 3228 was in no event to apply to income tax refund claims. Such claims were to be governed exclusively by § 281.

The essence of § 281 of the 1924 Act has been carried through to the present § 322 of the Internal Revenue Code.[13] The only significant change in the interval, for our purposes, was a reduction in the period of limitations, as measured from the payment of the tax, from four years to three years and finally to two years. And § 3228 of the Revised Statutes, as amended to state that it applies "except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes," has become the current § 3313 of the Code.

With this background in mind, we find the pattern of limitation periods for tax refund claims to be clear. Section 3313 of the Code establishes a four-year period for all internal revenue taxes, except as otherwise provided

---

[11] 43 Stat. 253, 342.

[12] H. R. Rep. No. 179, 68th Cong., 1st Sess., p. 71; S. Rep. No. 398, 68th Cong., 1st Sess., p. 44. This quotation was taken verbatim by the congressional committees from the statement of A. W. Gregg of the Treasury Department, Statement of the Changes Made in the Revenue Act of 1921 by H. R. 6715 and the Reasons Therefor, Senate Committee Print, 68th Cong., 1st Sess., March 6, 1924, p. 37.

[13] See Revenue Act of 1926, § 284, 44 Stat. 9, 66; Revenue Act of 1928, § 322, 45 Stat. 791, 861; Revenue Act of 1932, § 322, 47 Stat. 169, 242; Revenue Act of 1934, § 322, 48 Stat. 680, 750.

by law in the case of specified taxes. Among the latter is the income tax, as to which § 322 (b) (1) makes provision "otherwise" by requiring that refund claims be presented within two years of payment or within three years from the filing of the return. Provisions are also made "otherwise" in the case of the estate tax (§ 910 of the Code) and the gift tax (§ 1027 of the Code).

The argument is made, however, that § 322 (b) (1) deals only with income tax "overpayments" and not with income taxes "erroneously or illegally assessed or collected." Overpayments are said to refer solely to excess payments resulting from errors by taxpayers in the preparation of their returns or in related activities, while erroneous or illegal assessments and collections are claimed to relate to various kinds of errors on the part of revenue agents. Since there is no provision "otherwise" for income tax refund claims involving the latter type of errors, the conclusion is reached that the four-year limitation period of § 3313 remains applicable. We cannot agree.

In the absence of some contrary indication, we must assume that the framers of these statutory provisions intended to convey the ordinary meaning which is attached to the language they used. See *Rosenman* v. *United States,* 323 U. S. 658, 661. Hence we read the word "overpayment" in its usual sense, as meaning any payment in excess of that which is properly due. Such an excess payment may be traced to an error in mathematics or in judgment or in interpretation of facts or law. And the error may be committed by the taxpayer or by the revenue agents. Whatever the reason, the payment of more than is rightfully due is what characterizes an overpayment.

That this ordinary meaning is the one intended by the authors of § 322 (b) (1) is quite evident from the legislative history which we have detailed. The word "over-

payment" first appeared in § 281 of the 1924 Revenue Act, one of the direct ancestors of § 322 (b) (1). The word was there used as a substitute for the previous reference to payments "in excess of that properly due," a phrase that is a perfect definition of an overpayment and that is not necessarily confined to overpayments occasioned by errors made by taxpayers. The immediate predecessor of § 281 had employed that phrase and had been enacted in 1923 with the expressed intention of including claims growing out of illegal assessments. There was not the slightest indication that the substitution of the word "overpayment" was designed to narrow the scope of § 281. It apparently was a mere simplification in phraseology. But it does make clear the sense in which the word was first used in this context. The generic character of the word was emphasized from the start.[14] And we see no basis for making it over into a word of art at this late date.

The legislative history further reveals a consistent intention to make a separate and complete limitation provision for income tax refund claims, whatever might be the underlying basis of the claims. Section 322 and its predecessors were devised in order to provide such an exclusive scheme. Claims relating to the income tax have at all times been explicitly excluded from § 3313.[15]

---

[14] Section 272 of the 1924 Act (now § 321 of the Code) referred to "overpayments" of income tax installments as payments of "more than the amount determined to be the correct amount of such installment." See note 10, *supra*. Such a definition admits of no distinction between errors by the taxpayer and errors by the revenue agents.

[15] Reference should also be made to the second sentence of § 3313, providing that the amount of refund may not exceed the amount of tax paid during the four-year period. There is a parenthetical phrase in this sentence which specifically excludes income, war-profits, excess-profits, estate and gift taxes. If the first sentence of § 3313, establishing the four-year limitation period, applied to income tax refund

This arrangement is but part of the general plan evident in the Internal Revenue Code of providing separate treatment for the income, profits, estate and gift taxes, as distinct from the miscellaneous taxes and the excise, import and temporary taxes. We would be doing unwarranted violence to this clear demarcation were we to read the word "overpayment" so as to place certain types of income tax refund claims within the scope of § 3313, a section that has always been divorced from the income tax portion of the revenue laws.

It is pointed out, however, that various lower federal courts, beginning in 1939, have reached a contrary result.[16] They have held that § 3313 rather than § 322 (b) (1) governs refund claims for income taxes alleged to have been "erroneously or illegally assessed or collected." Since Congress has subsequently convened from time to time and has amended § 322 in other respects without expressly disapproving this interpretation, the contention is advanced that legislative acquiescence in the interpretation must be assumed. But the doctrine of legislative

---

claims arising out of illegal assessments, there would be no limit on the amount of refund by reason of this second sentence. Such a result is without support in the purpose or history of the provisions dealing with these refund claims.

[16] *Huntley* v. *Southern Oregon Sales,* 102 F. 2d 538, was the first case so holding. Subsequent decisions of the same tenor have relied in large part upon the *Huntley* case. *Olsen* v. *United States,* 32 F. Supp. 276; *United States* v. *Lederer Terminal W. Co.,* 139 F. 2d 679; *In re Tindle's Estate,* 59 F. Supp. 667, affirmed *per curiam sub nom. Pennsylvania Co. for Insurances on Lives* v. *United States,* 152 F. 2d 757; *Godfrey* v. *United States,* 61 F. Supp. 240; *Noble* v. *Kavanagh,* 66 F. Supp. 258, affirmed *per curiam,* 160 F. 2d 104; *Sbarbaro* v. *United States,* 73 F. Supp. 213. See also *Fawcett* v. *United States,* 70 F. Supp. 742. Compare *Central Hanover Bank & Trust Co.* v. *United States,* 67 F. Supp. 920. In many cases, however, the applicability of § 322 (b) (1) to claims of the type here involved was assumed without question and without an explicit holding on the point. See, for example, *United States* v. *Garbutt Oil Co.,* 302 U. S. 528.

534

acquiescence is at best only an auxiliary tool for use in interpreting ambiguous statutory provisions. See *Helvering* v. *Reynolds*, 313 U. S. 428, 432. Here the language and the purpose of Congress seem clear to us. The arrangement whereby all income tax refund claims are to be governed by what is now § 322 (b) (1) was established in an unmistakable manner nearly a quarter of a century ago, an arrangement that has been continued through various reenactments and changes in the revenue laws. And that arrangement has been consistently recognized and followed by the Treasury Department.[17] Under those circumstances, it would take more than legislative silence in the face of rather recent contrary decisions by lower federal courts to overcome the factors upon which we have placed reliance. Cf. *Electric Battery Co.* v. *Shimadzu*, 307 U. S. 5, 14; *Missouri* v. *Ross*, 299 U. S. 72, 75; *United States* v. *Elgin, J. & E. R. Co.*, 298 U. S. 492, 500. We do not expect Congress to make an affirmative move every time a lower court indulges in an erroneous interpretation. In short, the original legislative language speaks louder than such judicial action.

We accordingly conclude that all income tax refund claims, whatever the reasons giving rise to the claims, must be filed within three years from the time the return was filed or within two years from the time the tax was

---

[17] See I. T. 1447, I–2 Cum. Bull. 220 (1922); T. D. 3457, II–1 Cum. Bull. 177 (1923) and T. D. 3462, amending Regulations 62, II–1 Cum. Bull. 180 (1923); S. M. 1712, III–1 Cum. Bull. 345 (1924); S. M. 2293, III–2 Cum. Bull. 310 (1924); G. C. M. 3152, VII–1 Cum. Bull. 153 (1928); G. C. M. 13759, XIII–2 Cum. Bull. 102 (1934); Mim. 4814, 1938–2 Cum. Bull. 96; I. T. 3483, 1941–1 Cum. Bull. 397.

The present Treasury viewpoint is codified in Treasury Regulations 111, promulgated under the Internal Revenue Code, § 29.322–3 and § 29.322–7. See also Treasury Regulations 103, promulgated under the Code, § 19.322–3 and § 19.322–7, as amended by T. D. 5256, 1943 Cum. Bull. 550; and Treasury Regulations 101, promulgated under the Revenue Act of 1938, Articles 322–3 and 322–7.

paid, as provided in § 322 (b) (1). The four-year period prescribed by § 3313 is inapplicable to such claims. Since respondent filed its income tax refund claim more than three years after filing the return and more than two years after payment of the tax, its claim was out of time. That is true even though the claim arose out of an income tax alleged to have been "erroneously or illegally assessed or collected."

*Reversed.*

MR. JUSTICE DOUGLAS dissents.