ESTATE of Harriet Long MURPHY, Deceased, Zachariah Belcher, Jr., et al., Executors, Plaintiffs,

v.

UNITED STATES of America and John E. Manning, Former Collector of Internal Revenue, Defendants.

Civ. A. No. 1247-57.

United States District Court
D. New Jersey.
March 9, 1961.

Joseph M. Nolan, Newark, N. J., for plaintiffs.

Chester A. Weidenburner, U. S. Atty., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., Howard A. Heffron, Acting Asst. Atty. Gen., James P. Garland, Jerome Fink, Daniel M. Dwyer, Washington, D. C., for defendants.

HARTSHORNE, District Judge.

This is a suit for the refund of Federal estate taxes. The facts have been stipulated and are on file with the Court. The parties thereupon submitted the case to this Court for decision, filing briefs for that purpose.

On March 12, 1948, Harriet Long Murphy died, leaving a charitable remainder to Princeton University. Subsequently, in 1949, the tax on the estate was paid without a deduction being taken for the Princeton bequest. After an audit, a deficiency was assessed in the amount of $15,199.14. The executors made payment on March 29, 1950 of $6,503.67, representing $6,207.98 deficiency and $295.69 interest. On October 6, 1950 the Collector of Internal Revenue granted a credit for New Jersey inheritance taxes in the amount of $8,-991.16. On August 18, 1953 the executors filed a claim for refund based on the right to a deduction for the Princeton bequest. The District Director of Internal Revenue denied the claim on the ground that it was not filed within three years of payment, as required by Section 910 of the Internal Revenue Code of 1939. The present action followed.

Plaintiffs [the executors of the estate] contend that 26 U.S.C.A. § 3313 [1], which imposes a four year requirement for filing refund claims, governs rather than 26 U.S.C.A. § 910 [2], which has the three

1. "Sec. 3313. All claims for the refunding or crediting of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes, and except as otherwise provided by law in the case of employment taxes under subchapters A and D of chapter 9, and [sic] be presented to the Commissioner within four years next after the payment of such tax, penalty, or sum. The amount of the refund (in the case of taxes other than income, war-profits, excess-profits, estate, and gift taxes, and other than such employment taxes) shall not exceed the portion of the tax, penalty, or sum paid during the four years immediately preceding the filing of the claim, or if no claim was filed, then during the four years immediately preceding the allowance of the refund."

2. "Sec. 910. All claims for the refunding of the tax imposed by this subchapter alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax. The amount of the refund shall not exceed the portion of the tax paid during the three years immediately preceding the filing of the claim, or if no claim was filed, then during the three years immediately preceding the allowance of the refund."

year clause. Their argument is that Section 910 applies only to that portion of the estate tax found in subchapter A [the basic estate tax] and that the refund they seek is for a tax imposed under subchapter B [the additional estate tax].

The Government asserts that the additional estate tax merely supplements the basic estate tax, with certain changes, but retains the same statutory requirements for the administration of the additional tax as apply to the basic tax. To support this statutorily they cite 26 U.S.C.A. § 937.[3]

The crucial language in Section 937 is " * * * and shall be subject to the same provisions of law." The Government thus asks this Court to conclude that this means that Section 910 is applicable to subchapter B.

There can no longer be any question that an erroneous or illegal assessment of taxes or a mathematical error in computation resulting in overpayment of taxes creates a distinction in determining the applicability of Section 910. Such a distinction does not exist. The language of the Supreme Court in Jones v. Liberty Glass Co., 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142, puts that issue to rest insofar as income taxes are concerned. Since Section 910 uses the words " * * * erroneously or illegally assessed" rather than the more ambiguous word "overpayment", it is even clearer that the suggested distinction has no merit in the instant case. See Fawcett v. United States, D.C.N.D.Cal.1947, 70 F.Supp. 742, affirmed 9 Cir., 1947, 164 F.2d 696.

While *Liberty Glass* put to rest the problem of which statute of limitations applies in the income tax area, it did not, nor could it, dispose of the estate tax angle. The crucial difference is the fact that Section 910 refers to "this subchap-

ter," whereas the statute involved in *Liberty Glass* contains no such words of limitation.

However, the Court in *Liberty Glass*, after a lengthy historical review of the many statutes in question, and their revisions, concludes as to income tax:

"This arrangement is but part of the general plan evident in the Internal Revenue Code of providing separate treatment for the income profits, estate and gift taxes, as distinct from the miscellaneous taxes and the excise, import and temporary taxes." 332 U.S. at page 533, 68 S.Ct. at page 233.

This conclusion is largely due to the fact that Section 3313 applies "except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes." The Court thereupon, after alluding to the fact that provisions are made "otherwise" as to the income tax, so that Section 3313 does not apply thereto, adds:

"Provisions are also made 'otherwise' in the case of the estate tax (§ 910 of the Code) and the gift tax (§ 1027 of the Code)." 332 U.S. at page 531, 68 S.Ct. at page 232.

Thus, by its reasoning and by its words, our highest Court indicates that plaintiffs' contention that the four year statute applies is erroneous.

Furthermore, in Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, the Court applied Section 910 to the estate tax without considering the point here in question. At that time Section 910 applied to "claims * * * imposed by this Title * * *," referring to Title 1, and the additional estate tax was encompassed in Title 2. Thus the same conditions existed in *Rosenman* as

---

3. "Sec. 937. Except as provided in section 936, the tax imposed by section 935 shall be assessed, collected, and paid, in the same manner, and shall be subject to the same provisions of law (including penalties), as the tax imposed by subchapter A, except that in the case of

a citizen or resident of the United States a return shall be required if the value of the gross estate at the time of decedent's death exceeds the amount of the specific exemption provided in section 935(c)."

do here, except the labelling has been changed from Title to subchapter.

In affirming the *Fawcett* decision, the Ninth Circuit relied on *Liberty Glass*. Thus we have one Circuit directly applying *Liberty Glass* to estate taxes and we have the Supreme Court applying Section 910 to all estate taxes, though not specifically disposing of the issue here presented.

On the other hand, in In re Tindle's Estate, D.C.E.D.Pa.1945, 59 F.Supp. 667, affirmed without opinion sub nom. Pennsylvania Company for Insurances on Lives and Granting Annuities v. United States, 3 Cir., 1946, 152 F.2d 757, the District Court adopted what was then an accepted distinction between overpayment and legal or erroneous assessment, and as to the latter applied the four year statute [Section 3313]. This decision was rendered after *Rosenman* but apparently the District Court felt that *Rosenman* was not controlling, since the choice between the three or four year statute was never mentioned. It may also be that, since merely a month separated the decisions, the Court's attention was not called to the Supreme Court ruling. However, the Third Circuit, in affirming considerably later, also paid no attention to *Rosenman*.

On its face, therefore, *Tindle* is in conflict with the Ninth Circuit and the very words and reasoning of the Supreme Court, though it has not formally ruled on the point. This Court would ordinarily be bound by the Third Circuit position. However, there are several reasons why it does not feel it can follow *Tindle*. First, it is highly doubtful that an affirmance without opinion, and before the *Liberty Glass* case eliminated the distinction between overpayment and illegal assessment, or used such clear language and reasoning covering estate taxes, can be considered a Third Circuit position. Second, the peculiar facts of *Tindle* may have been the principal reason for the result. In that case far greater unfairness to the taxpayer was present, since it was not until the three years had elapsed that the Supreme Court ruled the previous Revenue policy to be illegal, thereby giving merit to any claim for refund. Third, the Third Circuit in Hill v. United States, 1959, 263 F.2d 885, where a refund of estate taxes was sought, applied Section 910. Although the case did not specifically discuss the point here involved, it may well be said that the Circuit has now concluded that Section 910 is applicable.

When Congress added the additional estate tax, it would have been rather senseless to insert the same sections in subchapter B as were present in subchapter A relating to the administration of the tax. It merely listed in two sec tions the changes in the tax and then sup plied the catch-all Section 937 to make applicable to B the necessary provisions of A. While the words "same provisions of law" are not as explicit in defining their scope as one might prefer, it certainly is a reasonable interpretation to conclude that the refund limitation section was encompassed therewith, particularly in view of *Liberty Glass*.

There remains one further question, i. e., whether the credit of the New Jersey inheritance tax, which occurred within three years of the claim for refund, is considered as a "payment" so as to make timely the refund claim in the amount of that credit.

Section 910 requires that the claim be made within three years "after payment." The meaning of payment is to be given no special significance beyond the ordinary meaning that the word conveys. Rosenman v. United States, supra. In Busser v. United States, 3 Cir., 1942, 130 F.2d 537, 539, payment is described as " * * * something given to discharge a debt or obligation * * *." This was reiterated by the Circuit in the *Hill* case and it obviously refers to "something given" by the debtor or obligor. Plaintiffs cite various cases in support of their position that the granting of a credit constitutes a payment. Hammond-Knowlton v. Hartford Connecticut Trust Company, 2 Cir., 1937, 89 F.2d 175, certiorari denied 302 U.S. 707, 58 S.Ct. 27, 82 L.Ed. 546; Gans S.S. Line

v. Bowers, 2 Cir., 1936, 82 F.2d 181, certiorari denied 298 U.S. 676, 56 S.Ct. 940, 80 L.Ed. 1397; Routzahn v. Reeves Bros. Co., 6 Cir., 1932, 59 F.2d 915, certiorari denied 287 U.S. 650, 53 S.Ct. 97, 77 L.Ed. 562; Untermyer v. Bowers, 2 Cir., 1953, 79 F.2d 9, certiorari denied 296 U.S. 641, 56 S.Ct. 174, 80 L.Ed. 456; Roles v. Earle, 9 Cir., 1952, 195 F.2d 346, certiorari denied 344 U.S. 819, 73 S.Ct. 14, 97 L.Ed. 637. However, in these cases, except *Hammond*, the credit on one tax assessment was then applied to another deficiency for a different year. The application of the credit to the different year was held to constitute payment for that different year. See *Roles*, supra, 195 F. 2d at page 349. There is no such application of the credit in the instant case.

If a credit were given and a refund made by the Internal Revenue, it would strain credulity to consider such an act as constituting "payment" by a taxpayer. Similarly, granting a credit, thereby eliminating the requirement of any further payment, could not be construed as a "payment." In other words, giving a credit eliminating the need for payment is not a "payment" within the meaning of the statute. It is only when that credit is applied to another existing deficiency that it becomes a "payment" within the statute.

*Hammond* is also distinguishable, since it involved the rejection of a claim for refund based on an inheritance tax credit. The rejection resulted in an overpayment since the full amount of Federal taxes due had already been paid. Here we do not have a prior payment in full with a subsequent rejection of the claim for credit. Instead we have the opposite; a payment up to but not including the amount of credit sought and a granting of that credit. Obviously, in *Hammond*, the first time plaintiffs could have been aware that they had overpaid and could seek a refund was when the final audit rejecting the inheritance tax credit was made. In the instant case the realization of the overpayment on the Princeton bequest was obvious from a much earlier date. The granting of the credit here did not create the overpayment as did the rejection of the credit in *Hammond*.

Here no money changed hands. The plaintiffs made payment in the exact amount of the deficiency assessed, less the inheritance tax credit, which they obviously had computed in advance. If the credit had been denied, either in whole or in part, the plaintiffs would have had to make further payment in the amount still owing. That further payment would have been a "payment" within the meaning of the statute. But where the credit is granted in full, relieving the estate from any further obligation, it would be stretching the ordinary meaning of the word "payment" beyond recognition to include such a situation. Again we are not here faced with a situation where the taxpayer has paid the full assessment and then is denied a refund based on a claim of credit due, as in *Hammond*.

Giving the ordinary meaning to the term, and applying it to the facts of this case, this Court must conclude that the granting of the credit for state inheritance taxes does not constitute a "payment."

Since the claim for refund was made more than three years after payment of the tax, this Court lacks jurisdiction over the subject matter. The complaint must therefore be dismissed.

The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and the conclusions of law required by F.R.Civ.P. 52, 28 U.S.C.A.

An order may be entered accordingly.