T.C. Memo. 2017-131

UNITED STATES TAX COURT

CHARLES GARAVAGLIA AND MARY ANN GARAVAGLIA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1351-14L.                          Filed July 3, 2017.

Evan H. Kaploe, for petitioners.

Alicia A. Mazurek, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  This case arises from a petition filed in response to
respective notices of determination concerning collection action(s) under section
6320 and/or 6330[1] dated December 18, 2013 (collectively, notices of determin-

_____

[1]All section references are to the Internal Revenue Code in effect at all

(continued...)

**[*2]** ation), as supplemented by respective supplemental notices of determination concerning collection action(s) under section 6330 dated May 19, 2016 (collectively, supplemental notices of determination), that respondent issued to petitioners.

The issues remaining for decision are:

(1) Are petitioners entitled to interest under section 6611 for the period October 31, 1997, through July 6, 2004, with respect to a $207,000 remittance that petitioner Charles Garavaglia made by check to a certain U.S. attorney's office in connection with a criminal case then pending against him?  We hold that they are not.

(2) Did respondent accurately calculate under section 6601 the amount of interest that respondent assessed with respect to each of petitioners' taxable years 1989 and 1990?[2]  We hold that respondent did.

---

[1](...continued)
relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In the supplemental notices of determination, respondent's settlement officer acknowledged that respondent did not apply a certain payment by petitioners in November 2013 in accordance with their instructions or intent and indicated that he took action to apply that payment pursuant to their instructions during his reconsideration of their case on remand.  Consequently, interest as provided under sec. 6601 was recomputed to reflect his corrective action before

(continued...)

**[*3]** (3) Did respondent abuse respondent's discretion in determining not to abate under section 6404(e)(1)(A) the interest remaining at issue that respondent assessed with respect to each of petitioners' taxable years 1989 and 1990?[3] We hold that respondent did not.

### FINDINGS OF FACT

The facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.

Petitioners, Charles Garavaglia (sometimes, Mr. Garavaglia) and Mary Ann Garavaglia (sometimes, Ms. Garavaglia), resided in Michigan at the time they filed the petition. (We shall sometimes refer collectively to Mr. Garavaglia and Ms. Garavaglia as the Garavaglias.)

The Garavaglias jointly filed Form 1040, U.S. Individual Income Tax Return (return), for each of their taxable years 1989 (1989 return) and 1990 (1990 return). Around January 29, 1997, Mr. Garavaglia entered into a plea agreement

---

[2](...continued)
the parties resumed the instant proceeding after that remand.

[3]Respondent concedes that petitioners are not liable for interest under sec. 6601 for the period October 31, 1997, through July 6, 2004, with respect to a $207,000 remittance by check that petitioner Charles Garavaglia made to a certain U.S. attorney's office in connection with a criminal case then pending against him.

[*4] in the U.S. District Court for the Eastern District of Michigan (U.S. District Court) in which he pleaded guilty to mail fraud under 18 U.S.C. sec. 1341 with respect to a fraudulent check that he mailed on June 28, 1991.  In that plea agreement, Mr. Garavaglia also pleaded guilty to conspiracy to defraud the U.S. Government under 18 U.S.C. sec. 371 with respect to a false corporate income tax return (i.e., Form 1120, U.S. Corporation Income Tax Return) that he filed on or about March 31, 1992, on behalf of Branch International Services, 70 percent of the stock of which he and Ms. Garavaglia owned at the time he filed that false return (sometimes, tax fraud charges).

In addition, Mr. Garavaglia agreed in the plea agreement that the U.S. District Court may order him "to pay restitution, relative to the tax fraud charges, in an amount equal to the tax loss, including interest and penalties, to be determined by the audit division of the I.R.S. and the United States Tax Court".  Mr. Garavaglia further agreed in the plea agreement that "the tax loss resulting from the charged tax offenses may be at least $207,000 [w]hich amount the defendant [Mr. Garavaglia] promises to pay prior to sentencing."

At a time not established by the record before February 2, 1998, Mr. Garavaglia remitted a cashier's check for $207,000, dated October 31, 1997, to the "United States Attorney Office" (sometimes, Mr. Garavaglia's $207,000 check or

**[\*5]**  Mr. Garavaglia's $207,000 remittance).  At a time not established by the record, an unidentified person made the notation "2:96. CR 80290 Rest." on the lower left corner of Mr. Garavaglia's $207,000 check.  On February 2, 1998, Mr. Garavaglia's $207,000 check was deposited into the U.S. Treasury.

On April 9, 1998, the U.S. District Court sentenced Mr. Garavaglia to 27 months in prison, with three years of supervised release, and ordered him to pay restitution to the Internal Revenue Service (IRS) of at least $207,000.  With respect to the U.S. District Court's order that Mr. Garavaglia pay restitution of at least $207,000, the U.S. District Court's amended judgment ordered in pertinent part:

> [Mr. Garavaglia] is ordered to pay an amount in tax loss, if any including interest and penalties, to be determined by the audit division of the I.R.S. and the United States Tax Court.  The Defendant has already paid $207,000.00 to the Internal Revenue Service toward any obligation that he might have.

In 2002, respondent sent to Mr. Garavaglia and one or more related corporations a no-change letter with respect to taxable years 1987 through 1991.

In April 2004, one of respondent's revenue agents (revenue agent) completed Form 4505, Reopening Memorandum (Form 4505 or reopening memorandum), in which the revenue agent requested approval to reopen the IRS' examination of petitioners' 1989 return and 1990 return.  Form 4505, section B1., titled

**[\*6]** "REASON FOR REQUEST", showed three preprinted reasons for the request. The revenue agent checked the following preprinted reason: "SERIOUS ADMINISTRATIVE OMISSION RESULTING IN CRITICISM, UNDESIR-ABLE PRECEDENT, OR INCONSISTENT TREATMENT." In Form 4505, section B3., titled "NARRATIVE JUSTIFICATION", the revenue agent stated "Attached". (We shall sometimes refer collectively to the reopening memorandum and the attachment thereto as the reopening memorandum.)

The attachment or so-called narrative justification for the revenue agent's request in the reopening memorandum to reopen the IRS' examination of petitioners' 1989 return and 1990 return stated in pertinent part:

> The key taxpayer is Charles Garavaglia. He is the 100% shareholder of C & G Labor Consultants (a/k/a C & G Consultants). Mr. Garavaglia is also the controlling shareholder of several other corporate entities including Branch International Services, CGBMT, Transinternational and B.I.S., Inc. The majority of the corporations were involved in the employee leasing business. C & G and CGBMT were consulting companies.
>
> During the years 1987 through 1991, Mr. Garavaglia was involved in a scheme that involved billing clients for workmen's compensation insurance based on the actual payroll expense; however, the corporations acquired the insurance for less than the actual payroll expense. The corporations deducted the billed out amount on their corporate returns. Mr. Garavaglia benefited [sic] from the difference in the amount he billed his clients and the amount of insurance he actually obtained.

**[\*7]**  Mr. Garavaglia was indicted on several counts by a Grand Jury.  In April of 1998, he pled guilty to two counts: mail fraud against three insurance companies and the other count was conspiracy, which included filing a false 1991 corporate return for Branch International Services.  The taxpayer was ordered to pay restitution in the amount of $500,000 to the insurance companies.  The taxpayer was also ordered to pay $207,000 which was held by the Department of Justice for any additional income tax assessed by the Internal Revenue Service with regard to the 1991 corporate return of Branch International Services.

A no change letter was issued in 2002 for the years 1987 through 1991 for Mr. Garavaglia and the related corporations, including C & G.  This no change has since been determined to be inaccurate as the analysis conducted by the IRS was incorrect.

Records have since been re-reviewed which indicate that unreported income exists with regard to C & G. * * * The AUSA reviewed bank records and other books and records to ascertain the amounts[.] * * * According to the financial analysis conducted by the AUSA, the corporations controlled by Mr. Garavaglia benefited [sic] greatly from the insurance scheme he was operating.

*        *        *        *        *        *        *

A review of the Garavaglia 1040 returns for 1989 and 1990, reveal that the taxpayer did not pick up this income as a flow-through from C & G.

On May 4, 2004, the revenue agent's director approved the revenue agent's request to reopen for examination petitioners' 1989 return and 1990 return.

**[\*8]**  On June 4, 2004, Mr. Garavaglia filed a complaint against the United States in the U.S. District Court, in which he sought the return of Mr. Garavaglia's $207,000 remittance.

On July 6, 2004, respondent sent to Mr. Garavaglia in care of Joseph Falcone, an attorney for Mr. Garavaglia, a check for $207,000, dated July 2, 2004, and payable to Mr. Garavaglia.  That check reflected a return of Mr. Garavaglia's $207,000 remittance.

On October 31, 2006, and May 22, 2009, respectively, respondent issued to Mr. Garavaglia and Ms. Garavaglia separate notices of deficiency (notice) with respect to their taxable years 1989 and 1990.  Mr. Garavaglia filed a petition with respect to the notice that respondent issued to him and thereby commenced the case at docket No. 2500-07.  (We shall refer to Mr. Garavaglia's case at docket No. 2500-07 as Mr. Garavaglia's Tax Court case.)  Ms. Garavaglia filed a petition with respect to the notice that respondent issued to her and thereby commenced the case at docket No. 14693-09.  (We shall refer to Ms. Garavaglia's case at docket No. 14693-09 as Ms. Garavaglia's Tax Court case.)

On January 13, 2012, the Court entered a decision in Mr. Garavaglia's Tax Court case.  That decision stated in pertinent part:

**[*9]**     Pursuant to the opinion of the Court filed September 26, 2011, and incorporating herein the facts recited in the respondent's computation as the findings of the Court, it is

ORDERED AND DECIDED:  That there are a [sic] deficiencies in income taxes due from the petitioner Charles Garavaglia for the taxable years 1989 and 1990 of $97,070 and $114,683 respectively; and

That there are additions to the taxes due from the petitioner Charles Garavaglia pursuant to I.R.C. Section 6663 for the taxable years 1989 and 1990 of $72,805.50 and $86,012.25, respectively.

On January 13, 2012, the Court entered a decision in Ms. Garavaglia's Tax Court case.  That decision stated in pertinent part:

Pursuant to the opinion of the Court filed September 26, 2011, and incorporating herein the facts recited in respondent's computation as the findings of the Court, it is

ORDERED AND DECIDED:  That there are a [sic] deficiencies in income taxes due from the petitioner Mary Ann Garavaglia for the taxable years 1989 and 1990 of $97,070 and $114,683, respectively.

On May 8, 2012, respondent assessed the additional tax imposed on petitioners for each of their taxable years 1989 and 1990 pursuant to the respective decisions that the Court entered in Mr. Garavaglia's Tax Court case and Ms. Garavaglia's Tax Court case.  On the same date, respondent assessed interest under section 6601 on that additional tax for each of those years.

[*10] On May 29, 2012, respondent assessed the fraud penalty under section 6663(a) imposed on Mr. Garavaglia for each of his taxable years 1989 and 1990 pursuant to the decision that the Court entered in Mr. Garavaglia's Tax Court case. On the same date, respondent assessed interest under section 6601 on that fraud penalty for each of those years.

On July 1, 2013, the IRS issued to petitioners separate final notices of intent to levy and notices of your right to a hearing (collectively, notices of intent to levy) with respect to petitioners' taxable years 1989 and 1990.

On July 5, 2013, the IRS received Form 12153, Request for a Collection Due Process or Equivalent Hearing (Form 12153), from petitioners. In Form 12153, petitioners requested a hearing with the IRS' Appeals Office (Appeals Office). In that form, petitioners indicated that they disagreed with the filing of the notices of intent to levy and stated: "Government Issued A 'No Change' Destroyed All My Records Then Reopened The 1989-1990 Tax Year[s]". In Form 12153, petitioners requested an offer-in-compromise as a collection alternative. The Garavaglias attached to Form 12153 an attachment in which they stated in pertinent part:

> [T]here should be no interest from 4/98 thru 6/04 because my wife
> and I posted $207,000.00 as required by the IRS and they paid no

[*11] interest on this money and at the same time charged interest and penalty during this time frame.

As a matter of good faith I make an offer of $500,000.00 to settle this matter because I did make a mistake and listened to my partners on how to handle insurance reports and payments. They fled [sic] out the forms, handled the audits and had been working together before I ever got involved with them on what became the scam they used previously.

To go one step further, it was the IRS who issued a NO CHANGE and destroyed the records. Therefore if there was a liability, it should have started from the new filing date even though down deep I know I owe nothing, proof being of the destroying of the medallionized [sic] checks for the loans that the IRS reviewed and issued NO CHANGE and closed the case.

In closing, the first audit was not started for over 2 years AFTER the money was put up and then it took another 2 years of investigation and review by all required parties and a NO CHANGE WAS IS-SUED.

On August 27, 2013, a settlement officer with the Appeals Office (settlement officer) who was assigned to petitioners' Form 12153 held a hearing with their authorized representative.

On December 18, 2013, the Appeals Office issued to petitioners separate notices of determination with respect to petitioners' taxable years 1989 and 1990. Each of those notices stated in pertinent part:

**[*12]** <u>**Summary of Determination**</u>

The determination of appeals in this case is as follows: Based on the available information, the legal and procedural requirements have been met; the proposed enforcement action (levy) was appropriate and is sustained. Appeals also made the determination to reject the submitted the [sic] Offer in Compromise (OIC) dated 08/02/2013 for the assessed 1040 liabilities and 08/27/2013 for the assessed fraud penalties as a collection alternative.

Each of the notices of determination included an attachment that stated in perti-

nent part:[4]

**<u>Challenges to the Existence or Amount of the Liability:</u>**

Your representative tried to raise the liability issue by submitting the completed Form 656-L and he also indicated on the attachment to the Form 656-L that the assessed interest is being challenged because neither the decision document nor the computation submitted to the Tax Court contemplate the assessment or application of interest per the IRM 35.8.2.5. Per your representative, the decision document and computation clearly demonstrate that interest was not included. Your representative went on to say that you were not put on the requisite notice that interest would be assessed or accrued on your liabilities. He also added that the decision document nowhere mentions that interest will accrue on the liabilities. SO Diakite informed your representative that the decision was entered under rule 155, it was not a stipulated agreement or an agreed case. The SO also informed that interests are statutory and should have been expected.

Based on the above information, your representative was informed that both the Tax Court and the Sixth Circuit Court addressed the liability issue which included the underlined interest. As the result,

---

[4]Attached as an appendix is the complete attachment that the Appeals Office included with the notices of determination.

[*13] the liability issue is a precluded issue during this hearing and the submitted Form 656-L will not be considered by appeals.

**No other issue was raised.**

On May 5, 2016, another settlement officer with the Appeals Office held a supplemental hearing with the Garavaglias' representative.

On May 19, 2016, respondent issued to petitioners separate supplemental notices of determination with respect to petitioners' taxable years 1989 and 1990. Each of those supplemental notices stated in pertinent part:

> The determination summarized below and described in detail in the attachment supplements the Notice of Determination dated December 18, 2013. We have also made a determination about your request for abatement of interest and this letter is also your final Notice of Determination regarding abatement of interest for the purposes of Section 6404(h). This supplement is being issued pursuant to the order of the Tax Court dated March 31, 2016 remanding the case to this Appeals office. * * *
>
> *       *       *       *       *       *       *
>
> **Summary of Determination**
>
> *       *       *       *       *       *       *
>
> You have raised issues regarding the amount of interest that has been charged. The interest has been correctly computed in accordance with the provisions of the Internal Revenue Code and there is no legal basis for an adjustment to the amounts owed.

**[\*14]** Each of the supplemental notices of determination included an attachment

that stated in pertinent part:

### SUMMARY AND RECOMMENDATION

You were issued Notice of Intent to Levy and Right to a Hearing for the periods listed above.

\*      \*      \*      \*      \*      \*      \*

A conference was afforded to your appointed representative by Appeals.

You provided various documents to Appeals during the course of the original hearing that was conducted by Appeals Settlement Officer M. Diakite. The file included copies of Form 843 requesting abatement of interest, Form 656-L seeking a compromise based on claims that no interest should be charged and a Jointly filed Offer in Compromise in the amount of $500,000.00 that was not able to be processed and a subsequent set of two Offers. You were a party to a joint Offer in Compromise to pay $388,367.40 under a concept of Effective Tax Administration to compromise the Joint Income Tax debt and a separate Offer in Compromise to pay $158,814.75 to compromise the Fraud Penalties for which only \* \* \* [Mr. Garavaglia is] liable. Statements on the Form 12153 and in supplemental attachments claimed that acceptance of the offers was warranted due to a Tax Court decision that did not include any interest provisions, the circumstances of \* \* \* [Mr. Garavaglia's] indictment for criminal charges, your agreement to be audited, [Mr. Garavaglia] having made a payment at or prior to sentencing relative to IRS claims, a claim that IRS determined that your 1989 and 1990 tax years were audited but a no change decision reached, that [Mr. Garavaglia] filed suit against IRS and received \* \* \* [Mr. Garavaglia's] $207,000 prior payment as a result, that IRS reopened an audit and proposed the deficiencies, that IRS destroyed records, that employees of IRS lied in court and that you are seeking fairness in resolving this matter while admitting

[*15] that you made a mistake in listening to former business partners.  The Form 656s included attachments listing similar claims but adding that IRS Counsel had failed to follow IRM procedures in preparing a decision document for the tax court * * *

Ms. Diakite considered these matters, determined matters of liability including interest issues were precluded due to the prior final determination of the tax court and that it was appropriate to reject the Offer in Compromises because you had asserted that you have assets in excess of the total amount of liability at issue and your claim of special circumstances did not warrant an acceptance of an Offer in Compromise under Effective Tax Administration provisions regarding economic hardship.

You were issued a Notice of Determination, made a timely petition to the U.S. Tax Court and the matter was remanded for a supplemental hearing in regards to consideration of your health conditions and to consider whether interest liability had been correctly determined.

Settlement Officer Leonard Hanline was assigned to the remanded matter.  Legal and procedural matters were reviewed and it was verified that the tax liabilities were assessed in accordance with the final decision of the Tax Court and IRC 6215(a).

The Tax Court finding that it has not previously determined interest within the issuance of a Rule 155 Decision is affirmed in the order for remand and interest issues are not found to be precluded under any other basis which would be consistent with IRC 6330(c)(4)(A)(i).  A Memo from IRS Counsel indicated that IRS Appeals should provide evidence of the computation of the interest charges that were included in the Notices of Intent to Levy and the tax court indicated that you were to provide specific challenges of discrepancies in the computation of interest.

The new settlement officer determined that in addition to the concerns of the court noted above, you had provided sufficient information to

[*16] require appeals to provide you the opportunity to make a specific claim for abatement of interest in accordance with IRM 8.22.8.17.

The previous determination of Appeals to reject the Offer in Compromise does not appear to have considered the offer under all possible bases as described in the regulations. There is a distinction within the Effective Tax Administration concept between acceptance of an Offer in Compromise where requiring the full payment of the debt is possible but would cause undue economic hardship to the taxpayers involved or a claim that not accepting the compromise would be unfair/inequitable. Your stated positions supporting your Offer in Compromise related claims were not clear, as you seemed to incorporate claims that no interest was owed at all and/or objecting to the fairness of charging interest, while also claiming that you were both near the end of your lives and that the liabilities could not be collected if you died before a compromise was accepted.

\*       \*       \*       \*       \*       \*       \*

Your claims that interest is not legally owed and/or that interest should not be charged for a specific period or periods of time were considered.

Your claim that interest cannot be charged because the Tax Court order dated 1/13/2012 did not state an amount of interest or a warning that interest was due on the determined deficiencies is without merit.

Your claim that interest should not be charged for a period where the United States held a payment \* \* \* [that Mr. Garavaglia] made to the U.S. Attorney's Office as part of a criminal sentencing plea until the date the payment was returned to \* \* \* [Mr. Garavaglia] without interest is denied.

The payment at issue was effectively treated as a cash deposit and there is no provision for a suspension or netting of interest under these circumstances.

[*17] The payment at issue involved only the Income Tax accounts and could not have any impact on the interest owed on the Fraud Penalty accounts.

There is no apparent legal basis for the abatement of interest based on the facts and circumstances of your case.

It is not appropriate to accept an Offer in Compromise under Effective Tax Administration criteria of either economic hardship or equitable grounds.

You proposed no other collection alternatives.

The use of levy action to collect the remaining account balances is sustained.

## BACKGROUND

[Mr. Garavaglia is] 79 years old, married to Mrs. Garavaglia who is 77 years old and there are no other dependents in the household. Neither of you are known to be currently employed. IRS records indicate recent income is derived from Social Security, retirement accounts and many investments in Stocks, partnerships, and closely held entities.

After Filing and paying your 1989 and 1990 income tax returns, IRS opened a Criminal Investigation of Mr. Garavaglia's business, income and tax related activities.

This resulted in an indictment of various federal charges and a plea agreement which included guilty pleas to 2 of the charges and sentencing which included a restitution order that referenced payment of at least $207,000.00 to IRS. You also agreed to co-operate with IRS in an examination to determine your related civil tax liabilities. You have demonstrated that a payment of $207,000.00 was remitted to the United States Attorney's Office at or about the time of sentencing and the payment was negotiated on 2/2/1998.

[*18] At some later date, IRS began an examination of your 1989 and 1990 tax returns. You claim that you were told that the audit was completed and that no change was found in your previously reported taxes. You claim to have sued IRS for a return of the $207,000.00 payment and have documented having received such payment in June of 2004. You were subsequently issued Statutory Notices of Deficiency. The notice issued to Mr. Garavaglia was dated 10/30/2006 and he made a timely petition for redetermination to the U.S. Tax Court. The matter was referred to IRS Appeals for possible settlement but ultimately went to trial.

A Notice of Deficiency to Mrs. Garavaglia was issued 5/22/2009 and she made a timely petition for redetermination to the U.S. Tax Court. The matter was referred to IRS Appeals for possible settlement but was ultimately joined in the pending Tax Court proceeding for Mr. Garavaglia.

After a lengthy trial, the tax court upheld joint tax liabilities in the amount of $97,070.00 for 1989 and $114,683.00 for 1990. The Tax Court also ruled that Mrs. Garavaglia was not liable for Accuracy related penalties due to the finding that Mr. Garavaglia was liable for Civil Fraud penalties and the law did not allow such stacking of penalties. In addition the Tax Court ruled that Mrs. Garavaglia was not granted Innocent Spouse relief.

The stated tax amounts were based on the Statutory Notices of Deficiency and the supporting computation statements provided to the Court by IRS and shared with your representative prior to entry of the Court Decision. Your representative of record affirmed receipt of the computation document and that no alternative computation was submitted on your behalf. Judge Laro issued the Tax Court decision under Tax Court Rule 155 on 1/13/2012.

You did not agree with the Tax Court decision and filed an Appeal to the U.S. 6th Circuit Court of Appeals on 4/5/2012.

**[*19]** IRS assessed the tax deficiency and IRC 6663(a) amounts on 5/8/2012 [sic].

The Tax Court Decision was upheld by the U.S. 6th Circuit Court of Appeals on 6/9/2013.

You were issued the Notice of Intent To Levy and Right to Hearing on 7/1/2013.

By letter dated 7/29/2013 you were asked to provide the Appeals Settlement Officer with [additional documents] * * *

\*      \*      \*      \*      \*      \*      \*

There were 22 days between the issuance of the request [for additional documents] noted above and the first scheduled meeting with your representative. The meeting was postponed 2 times at the request of your representative and finally held 29 days after the request for information was made.

A face-to face conference was held between Appeals and your appointed representative on 8/27/2013.

After an agreement that a Form 656-L could not be considered, an Effective Tax Administration basis Form 656 proposing a $500,000.00 compromise was submitted with a Financial Statement Form 433-A to Ms. Diakite. The offer was submitted including your spouse as a party but such an offer cannot include both joint income tax liabilities and * * * [Mr. Garavaglia's] separate penalty liabilities. You then submitted a joint Offer for the income tax liabilities and a separate offer for the penalty accounts. The financial statement was provided with attachments listing assets but without any supporting documentation.

An additional request was made for verification of statements made on the Form 433-A but no response was provided. All valuations of assets, income and expenses were adopted per amounts stated on the

**[*20]** Form 433-A or supplemental statements that were needed due to the volume of assets disclosed.

Your representative offered to produce additional documentation via fax on 11/12/2013 but did not do so after being told that disclosed assets were worth $3,100,000.00, whereas the total liability was $1,752,398.31 and no documentation/information was provided to warrant accepting this offer under special circumstance consideration.

You subsequently remitted a payment to satisfy the tax amounts owed for the 1989 and 1990 tax accounts as well as paying the separate penalty amounts you owed. The payment application was not made in accordance with your instructions or intent and has been corrected during the reconsideration of this matter.

Your representative agreed to the credit transfers and has been pro- vided updated account transcripts to show the corrected results.

By letter dated 4/14/2016, Appeals requested that you provide addi- tional documentation within 14 days. You were requested to provide documentation of your health issues including general conditions and severity of them. You were requested to provide documentation of your out-of-pocket medical costs for the past 3 years. You were pro- vided copies of your prior financial disclosure and asked to update it to document the ownership of the specific assets and note any signifi- cant changes in values. You were asked to provide details about your interest abatement claims in accordance with IRM 8.22.8.17(3) and to provide citations of Law, Regulations, IRM and Court Decisions which support such claims.

A copy of the letter was sent to you and to your appointed represen- tative. Your letter was returned as undeliverable, apparently due to you living in Arizona during the winter months.

None of the requested information was provided to Appeals before the conference held on 5/5/2016.

**[*21]** At the conference some medical information was provided but some information was withheld due to concerns about a confidentiality agreement for an experimental treatment being administered to you. Some computations of interest and other documents were submitted to support your claim for interest abatement.

Additional documentation was requested regarding the medical expenses, a copy of the 1998 Plea agreement to confirm the language of the court order for payment of taxes and additional financial information regarding apparent assets that were not previously disclosed. Your representative agreed to provide a response by 5/13/2016.

Appeals warned that due to a need to meet the Tax Court's timeline for a redetermination, documentation would need to be received by 5/16/2016.

There has been no further contact from you or your representative since 5/5/2016.

### LEGAL AND ADMINISTRATIVE REVIEW

Settlement Officer Leonard Hanline verified the requirements of any applicable law or administrative procedure were met. IRS records confirmed the proper issuance of the notice and demand, Notice of Intent to Levy and notice of a right to a Collection Due Process (CDP) hearing.

The Tax Court has ruled that there was no expiration of the IRC 6501(a) statutory period for assessment of the deficiency amounts due to meeting an exception for false returns or fraud per IRC 6501(c).

An assessment was properly made for each tax or penalty and period listed on the CDP notice under the provisions of IRC 6215(b)(1), following a determination of the Tax Court for the deficiency amounts sustained by the Court. Although a timely appeal was filed to dispute the Tax Court determination, no bond was filed under the

[*22] provisions of IRC 7485(a)(1) and therefore the making of assessments were not stayed during the appeal. The deficiency amounts were subsequently upheld in [the] decision of the 6th Circuit Court of Appeals.

Notice and demand for payment was mailed to your last known address.

There was a balance due on each of the listed accounts when the Notice of Intent to Levy was issued.

Interest is owed on taxes and Fraud Penalties asserted under IRC 6663(a) which [sic] determined in the prior Tax Court decision. This is in accordance [sic] IRC§ 6601(a), (b) and (e)(2)(A).

There is no indication that any cash deposit was made with IRS under the provisions of IRC Section 6603(a), when the Statutory Notice of Deficiency was issued, therefore statutory interest continued to accrue during the period of Judicial review and thereafter.

Settlement Officer Hanline had no prior involvement with respect to the specific tax periods either in Appeals or Compliance.

Settlement Officer Hanline reviewed the Collection file, IRS records and information you provided. His review confirmed that the IRS followed all legal and procedural requirements, and the actions taken or proposed were appropriate under the circumstances.

## ISSUES YOU RAISED

### Collection Alternatives Requested

You requested the collection alternative of an Offer in Compromise to resolve each type of liability. On the jointly submitted Form 656, you stated that the amount of your offer was "$370,570.75 from the date of order" but then payment terms indicated that the total offer amount

[*23] was $388,367.40 with $77,673.48 paid with the offer and the balance of $310,693.92 to be paid on day 1 of the 1st month after acceptance.

The Separate Form 656 for the penalty accounts proposed paying $158,814.75, $31,762.95 paid with the offer and the balance to be paid in two installments of $63,525.90 on the first day of the first and second months after acceptance.

The apparent conflict in the joint offer amount and payment terms was not addressed in any known revision to the proposal.

The Joint Offer was premised on promotion of effective tax administration (ETA) and included various statements. A statement on Form 656 claimed that the Tax Court Decision of Judge Laro did not include any provision requiring the payment of interest and the statement submitted by the IRS Attorney on order from the Judge also made no statement regarding interest.

The Separate Offer was premised on Doubt as to Collectibility [sic], claiming there were insufficient income and assets to pay the Fraud Penalty debts.

Attachments to the Form 656s provided supplemental information which has been largely recounted above in the background information section but added additional details about claims that IRS had purposely destroyed evidence, did not restart the audit until after you were given back your payment of $207,000.00 that was paid to the United States Attorney's Office, that various IRS and third parties lied about your situation, that you were seeking fairness, that you should not have to pay interest between 4/1998 and 6/2004 because you posted a payment as required by IRS and should not be charged interest during that period and also claimed that the duration of the audit was too long.

The proposed Offers in Compromise were rejected at the time the first Notice of Determination was issued.

[*24] *      *      *      *      *      *      *

You did not provide any updated financial documentation during the reconsideration period but review of IRS information reporting documents indicates that you failed to disclose significant amounts of assets at the time you proposed the Offer in Compromises.

Specifically there are multiple Individual Retirement Accounts with a total value of approximately $338,000.00 that were not listed on your original joint financial disclosure.

In addition to those assets, recent activity shows ownership in C&G Consultants (an S Corporation) and there are multiple Common Stock investments indicated by dividends paid to you for stocks held in the name of Trusts that you and your spouse have created. You have not provided copies of the Trust documents or listed the assets which are nominally owned by the trusts, as indicated by information reports being submitted to IRS.

You originally stated that your joint and separate assets were worth or cost as least $3,269,094 as shown on the attached listing. Additional assets were noted by Appeals but a total value could not be ascertained without additional investigation. Your assets appear to have a net worth of more than double the existing joint tax liabilities which are comprised solely of late payment penalties and interest totaling $863,739.89 and the Fraud Penalty interest debts totaling $626,941.38 of interest. The amounts owed are as of 5/16/2016 and were shown on transcripts provided to your representative at the 5/5/2016 conference.

*      *      *      *      *      *      *

Although your recent year tax returns report large amounts of tax attributes which minimize your taxable income, it is not apparent that you have insufficient cash flow to pay all reasonable and necessary living expenses, including medical care, or that payment of such expenses required any significant disposition of assets.

[*25] There was a large increase in the amount of stock dividends reported as paid to you and/or your spouse in 2015 and the total amount of documented income is more than sufficient to pay your living expenses based on the use of National and Local Expense standards for such expenses in a household of two people.

You own two homes which appear to be otherwise unencumbered with the exception of the tax lien filings. There are means of accessing equity in such properties that would not necessarily require liquidation of them both.

The definition of financial hardship is described in Regulation Section 301.7122-1(c)(3)(i)(C) as being where liquidation of assets to pay the outstanding tax liabilities would render the taxpayer unable to meet basic living expenses.

The information available to Appeals does not lead to such a conclusion and does not support acceptance of an Offer in Compromise under this type of basis.

Alternatively, you have claimed that failure to accept an Offer in Compromise would result in an inequity.

For such issues of Public Policy and equity to exist, other taxpayers would be inclined to see the rejection of the proposal as unfair and it would undermine public confidence in the tax laws.

You have litigated this matter intensely from the start to the present time. Despite losing every such attempt, you still claim that there is no fair basis for the liability. You had multiple opportunities to make earlier payments regarding the proposed deficiencies and penalties and could have avoided a significant portion of the current interest debt.

An effective tax administration Offer proposal should not be accepted if it would undermine tax compliance including offers from a taxpayer who has taken deliberate actions to avoid payment of taxes.

**[\*26]** IRM 5.8.11.2.2 includes a requirement that Offers Accepted under Public Policy or Equity Grounds must demonstrate that the taxpayer must have acted reasonably and responsibly in the situation giving rise to the liabilities.

It is determined that the facts and circumstances do not support acceptance of an Offer in Compromise under Effective Tax Administration Public Policy or Equitable grounds or under any Doubt as to Collectibility [sic] standard.

**<u>Challenges to the Liability</u>**

The original CDP Determination stated that the issue of interest was a precluded liability issue.  That was incorrect and upon remand of the matter, you were asked to provide information to allow consideration of any applicable interest abatement issues per Appeals IRM 8.22.8.17.3.

You are precluded by IRC§6330(c)(2)(B) [sic] from raising issues of liability that were previously subject of a Statutory Notice of Deficiency and/or IRC 6330(c)(4)(A)(i) & (ii) [sic] where the liabilities were decided by the tax court or considered in a prior administrative appeal.

In the remand order, the Tax Court Judge advised that you should take note that there is no significance to the fact that the decision entered against you in Docket Number 2500-07 does not include any stated liability for interest, since in a deficiency case the Tax Court has no jurisdiction over deficiency interest.  (See Smith & Hook v. Commissioner, T.C.Memo. [sic] 2009-33, slip op. at 9-12.)

Since the Tax Court did not have jurisdiction over the deficiency interest in the prior Judicial Review and you have had no subsequent consideration of the issue, the issue of Interest Abatement is not a precluded issue.

**[*27]** You have fully paid the joint income tax deficiencies that were determined in the prior tax court decision. Regarding the Income Tax accounts, you now owe only penalties under IRC§ 6651(a)(2) and interest due under IRC §6601(a) & (b), IRC§6621(a)(2) [sic] and IRC§6622 [sic].

You have fully paid the IRC 6663(a) [sic] penalty amounts and now owe only interest due under IRC §6601(a) & (b), IRC§6621(a)(2) [sic] and IRC§6622 [sic].

You have claimed IRS should not collect any interest on the deficiencies as determined by the tax court. You claim that the order of the tax court was based on a statement prepared by IRS Counsel and it failed to address any concept of interest being applicable to the deficiency.

Your representative quoted IRM Section 35.8.2.5 as support for your claim.

During the conference with your representative the Settlement Officer expressed that IRM § 35.8.2.5 is applicable to documents prepared by IRS Counsel for Stipulated Agreements of a tax court matter.

Your representative agreed that your Tax Court Decision was a Rule 155 Decision not a Stipulated Decision. Your subsequent appeal of that decision is sufficient evidence to show it was not a Stipulated Decision.

The Settlement Officer expressed that while IRS will generally include an information statement regarding the effect of the statutory interest that will be charged in addition to an agreed Tax Deficiency, it is advisory only and not an operating paragraph. This is explained in IRM Section 35.8.2.5(6).

Thus, even where an IRS procedure directs the inclusion of such a statement, it has no legally binding relevance whether it is included or

**[*28]** omitted and does not waive the requirements of Interest owed based on IRC§ 6601(a), (b) and (e)(2)(A).

Your representative stated that he would submit additional support for your position on this matter but failed to do so.

Clearly you did not enter a stipulation to the amount of tax deficiency as you filed an appeal of the Tax Court Decision. Your claim that interest cannot be charged due to omission of a purely advisory paragraph in the Tax Court Decision has no legal merit which would support an adjustment to the interest owed.

Appeals has provided your representative with an analysis of each tax and penalty account, current tax account transcripts and computation information. Appeals determined that the amount of liability listed on the Intent to Levy Notice dated 7/1/2013 could be reconciled to the correct amounts based on a review of each account. Minor discrepancies exist only in that the accrual rate for Failure to Pay Penalty changed within the period of the original computation and your partial payment of the 1989 tax and 1989 Fraud Penalty via submission of the initial payment of your offer in compromise proposals.

You have generally claimed that the amount of time before the deficiencies were determined was excessive but have not made a specific claim of IRS delay or error.

IRC Section 6404(g)(1)(A) provides for suspension of interest where IRS takes an inappropriate amount of time to complete a tax audit. The time frame for completion of an audit was 18 months from the extended due date of the returns for tax years 1989 and 1990. However, IRC§6404(g)(2)(B) [sic] precludes a suspension of interest if the case involves fraud.

The Tax Court, in Docket Number 2500-07 sustained a finding of a Fraud Penalty under IRC § 6663(a) for both 1989 and 1990. Therefore, you do not qualify for an interest suspension based on the duration of the period IRS took to determine the tax deficiency.

[*29] Your representative provided copies of a Cashier's Check dated 31Oct 97 in the amount of $207,000.00 and made payable to United States Attorney Office. The reverse of the check shows it was negotiated by the Government on Feb 2 1998 and deposited for credit to the United States Treasury.

Your representative challenged a description of this payment as being court ordered restitution, while the check is notated with a case number 96-80290 and "Rest.".

Your representative claims this was a tax payment made as part of a plea agreement of a criminal case.

Your representative presented a copy of a United States Treasury Check No. 2221 18206126, dated 07 02 04, in the amount of $207,000.00 and made payable to Charles L. Garavaglia C/O Atty. Alex Nicholaides, a member of IRS District Counsel in Detroit. The check has a notation of being a tax refund for the 12/02 period.

Some computations of interest were provided to Appeals which your representative claimed had been prepared by you. One of them showed a computation of interest on the amount of $207,000.00 from March 1998 to July 2 - 4 2004 with total interest of $120,164.81.

This seems to be relative to a claim that you should have interest abatement for the period of time that the government held your $207,000.00.

It appeared somewhat inequitable for the government to have held your $207,000.00 for over 6 years before refunding it without any interest and still charge you interest on that same amount during that same period of time.

Initially it could not be determined that your payment to the United States Attorney Office qualified as a tax payment as defined by the Internal Revenue Code.

[*30] Your payment contained no identification of a tax year or other explanation of how the payment was to be designated between one or more tax years. There was no IRS account for years 1989 or 1990 which contained a reference to the credit for your payment.

However, the refund check contains a notation of Tax Refund and a possible reference to the 12/2002 tax period. Research of your 2002 account did locate the credit of $207,000.00 but it contained a credit date of 6/4/1998 and was added to the account in the 18th week of 2004.

It appears that the credit was placed in the 2002 tax account to facilitate the return of your funds after you took action to seek a return of the $207,000.00 from IRS and/or the District Court relative to the [Mr. Garavaglia's] 1998 Plea Agreement [terms]. The issue has been described as being caused by the inclusion of a provision that the $207,000.00 would be returned if IRS issued a No Change decision regarding the 1989 and 1990 tax years. The provision has been attributed to * * * [Mr. Garavaglia's] legal representatives for the criminal proceeding and described as non-standard.

The Tax Court has already ruled on all claims regarding the tax deficiencies and the IRS assessments are legally valid.

IRC §6404(e)(1)(A) allows abatement of interest where there has been an unreasonable error or delay by an Internal Revenue Service Employee. However, this is predicated on there being no significant aspect of such error or delay being attributable to the taxpayer involved and only after the IRS had contacted the taxpayer with respect to such deficiency or payment.

It is apparent that * * * [Mr. Garavaglia] had significant contribution to the issue of the interest owed in that you triggered the 2004 refund of your payment but possibly more significant is that you received the funds back prior to the IRS notice of the tax deficiency.

**[*31]**  There is no apparent legal basis which supports an abatement of Interest under the provisions of IRC § 6404.

IRS has effectively treated * * * [Mr. Garavaglia's] 1998 payment to the Government as a cash deposit as described in Rev. Proc. 84-58, which preceded IRC § 6603 and was in effect at the time of your payment.  Per Section 5. Interest - Part .04, no interest will be allowed or paid on a deposit or any portion of a deposit returned to the tax-payer.

Another computation was presented which showed the amount of interest that you indicate would be owed if interest was charged only from Nov. - Dec. 2006 thru [sic] Nov. 12, 2013.  While not specifically explained, it appears that this would be the time from when IRS notified you of the proposed deficiencies to the date that you submitted a payment of those amounts.

You appear to be claiming that interest should not be owed prior to the IRS Statutory Notice of Deficiency issuance on 11/8/2006.  This is not supported where IRC § 6601(a) requires that interest be charged from the due date for payment of the tax at issue, which would be 4/15/1990 for the 1989 tax year and 4/15/1991 for the 1990 tax year.

IRS actually received the most recent payment on 11/19/2013 and it has been credited to your accounts to satisfy the tax and penalty amounts determined by the prior Tax Court decision.

Your representative indicated a belief that no additional interest could be charged after the date of the 11/19/2013 payment.  This is incorrect as interest continues to accrue and compound on the interest that was owed up to the 11/19/2013 payment, in accordance with IRC § 6622.

After consideration of all claims presented or otherwise reviewed, no abatement of interest is appropriate. The original determination should have included an explanation of the right to a judicial review

**[*32]** of Interest by the Tax Court per IRC § 6404(h).  As you are now receiving a review of the interest issue by the tax court, no harm has been caused by the prior omission explaining your extended period to petition the court to review the interest issue.

The Tax Court can review your interest abatement petition only if you meet the net worth eligibility requirements described below:

• For Individual Taxpayers - Your net worth must not exceed $2 million as of the filing date of your petition for review.  This test treats individuals filing a joint return as separate taxpayers in this category.

While it is apparent that you have not provided a full financial disclosure, it is not clear if your net worth exceeds the stated limit for a review of interest.

**You raised no other issues.**

## BALANCING ANALYSIS

While the use of levy action is inherently intrusive, you have proposed no acceptable collection alternative.  You did not present a significant portion of the requested documentation to assist Appeals in consideration of this matter.

\*      \*      \*      \*      \*      \*      \*

Your requests for relief from interest charges cannot be appropriately granted under the provisions of the Internal Revenue Code.

Under these circumstances, the use of levy action is the least intrusive collection method available which balances the legitimate right of the Government to collect the liabilities at issue, with your legitimate concerns regarding intrusiveness.

The use of levy action is sustained.

**[\*33]**                                   OPINION

Petitioners have the burden of proof with respect to each of the three issues

that remain for decision.  That is to say, petitioners must establish (1) that they are

entitled to interest under section 6611 for the period October 31, 1997, through

July 6, 2004, with respect to Mr. Garavaglia's $207,000 remittance to a certain

U.S. attorney's office in connection with a criminal case then pending against him,

see Rule 142(a), (2) that respondent did not accurately calculate under section

6601 the amount of interest that respondent assessed with respect to each of

petitioners' taxable years 1989 and 1990,[5] see Rule 142(a), and (3) that respondent

abused respondent's discretion in determining not to abate under section

6404(e)(1)(A) the interest remaining at issue that respondent assessed with respect

to each of petitioners' taxable years 1989 and 1990,[6] see sec. 6404(h); Lee v.

Commissioner, 113 T.C. 145, 149 (1999).  That this case was submitted fully

stipulated under Rule 122 does not change petitioners' burden of proof or the

effect of a failure of proof.  See Rule 122(b); Borchers v. Commissioner, 95 T.C.

82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991).

---

[5]See supra note 2.

[6]See supra note 3.

[*34] We address first whether petitioners are entitled to interest under section 6611 for the period October 31, 1997, through July 6, 2004, with respect to Mr. Garavaglia's $207,000 remittance. It is petitioners' position that they are entitled to such so-called overpayment interest. In support of their position, petitioners first contend that Mr. Garavaglia's $207,000 remittance constituted a payment, not a deposit, by him. Proceeding on the assumption that they are correct that that remittance constituted a payment, not a deposit, by Mr. Garavaglia, petitioners next contend that, because in 2002 respondent issued to Mr. Garavaglia a no-change letter with respect to each of his taxable years 1987 through 1991,

> until the re-opening of the investigation [of taxable years 1989 and 1990] years later imposing additional liability, in 2004 the $207,000 represented an overpayment - that is, monies in excess of what was actually due. In other words, in 2004, when the funds were returned, it being determined by the respondent that no further monies were due from petitioner[s], the $207,000 was not necessary to be applied to any outstanding tax obligation and could be returned. [Fn. ref. omitted.]

Section 6611(a) provides that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621." The term 'overpayment' has been interpreted to mean "any payment in excess of that which is properly due." Jones v. Liberty

[*35] Glass Co., 332 U.S. 524, 531 (1947); Winn-Dixie Stores, Inc. v. Commissioner, 110 T.C. 291, 295 n.5 (1998).

A remittance will be treated as a payment of tax if the remittance is (1) not specifically designated as a deposit in the nature of a cash bond (deposit), (2) made in response to a tax liability proposed in, for example, a revenue agent's report or a revenue examiner's report, and (3) for the entire amount of the proposed liability. See Rev. Proc. 84-58, sec. 4.03(1), 1984-2 C.B. 501, 502-503. However, "a taxpayer who makes a remittance before a tax liability has been ascertained is generally presumed to have intended to make a deposit." Malachinski v. Commissioner, T.C. Memo. 1999-182, 1999 WL 349342, at *8, aff'd, 268 F.3d 497 (2001); see also Rev. Proc. 84-58, sec. 4.02(1), 1984-2 C.B. at 502 (remittance treated as a deposit if (1) remitted before the mailing of a notice and (2) taxpayer designates in writing that remittance is intended to be a deposit); Rev. Proc. 84-58, sec. 4.04(1), 1984-2 C.B. at 503 (undesignated remittance not described in section 4.03 will be treated as deposit if remittance is made before the liability is proposed to the taxpayer in writing (e.g., before the issuance of a revenue agent's report or a revenue examiner's report)).

On the record before us, we find that petitioners have failed to carry their burden of establishing that Mr. Garavaglia's $207,000 remittance before February

[*36] 2, 1998, to the office of a certain U.S. attorney constituted a payment, let alone an overpayment for purposes of section 6611(a). In fact, we have found facts on the fully stipulated record before us that refute petitioners' position that they are entitled to interest under section 6611 for the period October 31, 1997, through July 6, 2004, with respect to Mr. Garavaglia's $207,000 remittance.

Around January 29, 1997, Mr. Garavaglia entered into a plea agreement in the U.S. District Court in which he pleaded guilty to one count of mail fraud under 18 U.S.C. sec. 1341 with respect to a fraudulent check that he mailed on June 28, 1991. In that plea agreement, Mr. Garavaglia also pleaded guilty to conspiracy to defraud the U.S. Government under 18 U.S.C. sec. 371 with respect to a false corporate income tax return that he filed on or about March 31, 1992, on behalf of Branch International Services, 70 percent of the stock of which he and Ms. Garavaglia owned at the time he filed that false tax return. The record does not establish that either of the two counts to which Mr. Garavaglia pleaded guilty in the plea agreement involved or related to petitioners' taxable year 1989 or 1990.

In addition, Mr. Garavaglia agreed in the plea agreement that the U.S. District Court may order him "to pay restitution, relative to the tax fraud charges, in an amount equal to the tax loss, including interest and penalties, to be deter- mined by the audit division of the I.R.S. and the United States Tax Court". Mr.

**[\*37]** Garavaglia further agreed in the plea agreement that "the tax loss resulting from the charged tax offenses may be at least $207,000 [w]hich amount the defendant [Mr. Garavaglia] promises to pay prior to sentencing."

At a time not established by the record before February 2, 1998, Mr. Garavaglia remitted Mr. Garavaglia's $207,000 check, dated October 31, 1997, to the "United States Attorney Office". At a time not established by the record, an unidentified person made the notation "2:96. CR 80290 Rest." on the lower left corner of Mr. Garavaglia's $207,000 check. On February 2, 1998, Mr. Garavaglia's $207,000 check was deposited into the U.S. Treasury.

On April 9, 1998, the U.S. District Court sentenced Mr. Garavaglia to 27 months in prison, with three years of supervised release, and ordered him to pay restitution to the IRS of at least $207,000. With respect to the U.S. District Court's order that Mr. Garavaglia pay restitution of at least $207,000, the U.S. District Court's amended judgment ordered in pertinent part:

> [Mr. Garavaglia] is ordered to pay an amount in tax loss, if any including interest and penalties, to be determined by the audit division of the I.R.S. and the United States Tax Court. The Defendant has already paid $207,000.00 to the Internal Revenue Service toward any obligation that he might have.

In 2002, respondent sent to Mr. Garavaglia and one or more related corporations a no-change letter with respect to taxable years 1987 through 1991. At the

**[\*38]** time before February 2, 1998, Mr. Garavaglia sent Mr. Garavaglia's $207,000 check to the office of a certain U.S. attorney, respondent had not made any determination in a notice of deficiency of a deficiency, addition to Federal income tax (tax), and/or penalty for petitioners' taxable year 1989 or 1990. Nor had a revenue agent proposed any deficiency for either of those years in a revenue agent's report. See Jones, 332 U.S. at 531; Winn-Dixie Stores, Inc. v. Commissioner, 110 T.C. at 295 n.5; Rev. Proc. 84-58, sec. 4.03(1).

On the record before us, we find that petitioners have failed to carry their burden of establishing that Mr. Garavaglia's $207,000 remittance was a payment, not a deposit. See Malachinski v. Commissioner, 1999 WL 349342, at \*8; see also Rev. Proc. 84-58, sec. 4.02(1).

Assuming arguendo that we had found that petitioners carried their burden of establishing that Mr. Garavaglia's $207,000 remittance was a payment, not a deposit, we find on the record before us that petitioners have failed to carry their burden of establishing that that remittance was a "payment in excess of that which \* \* \* [was] properly due [for either or both of petitioners' taxable years 1989 and 1990]". Jones, 332 U.S. at 531. In Gould v. Commissioner, 139 T.C. 418, 445 (2012), aff'd, 552 F. App'x 250 (4th Cir. 2014), we found that a no-change letter that only notifies a taxpayer that the IRS made no change to the tax reported for

[*39] the period in question does not constitute an acknowledgment by the IRS that the tax was properly reported for that period where the no-change letter contains no determination to that effect. Moreover, a letter to the taxpayer from the Commissioner of Internal Revenue (Commissioner) accepting the taxpayer's tax return for a particular taxable year does not bar a later determination by the Commissioner that there is a deficiency for that year. See Opine Timber Co. v. Commissioner, 64 T.C. 700, 713 (1975), aff'd without published opinion, 552 F.2d 368 (5th Cir. 1977); Vlock v. Commissioner, T.C. Memo. 2010-3, 2010 WL 23332, at *17. The record does not establish that respondent concluded or determined in the no-change letter that respondent sent in 2002 to Mr. Garavaglia and certain related corporations with respect to the taxable years 1987 through 1991 that petitioners had properly reported the tax in each of their 1989 return and 1990 return. It was petitioners' burden to establish any such contention.

On the record before us, we find that petitioners have failed to carry their burden of establishing that Mr. Garavaglia's $207,000 remittance constituted an overpayment for purposes of section 6611(a) with respect to either or both of their taxable years 1989 and 1990. See Jones, 332 U.S. at 531; Winn-Dixie Stores, Inc. v. Commissioner, 110 T.C. at 295 n.5.

[*40]  We consider next whether respondent accurately calculated under section 6601 the amount of interest that respondent assessed with respect to each of petitioners' taxable years 1989 and 1990.[7]  It is petitioners' position that respondent did not accurately calculate that interest.  We find the record devoid of reliable evidence and petitioners' briefs devoid of sound argument that support petitioners' position.  On the record before us, we find that petitioners have failed to carry their burden of establishing that respondent did not properly calculate under section 6601 the amount of interest that respondent assessed with respect to each of petitioners' taxable years 1989 and 1990.

We turn finally to whether respondent abused respondent's discretion in determining not to abate under section 6404(e)(1)(A) the interest remaining at issue that respondent assessed with respect to each of petitioners' taxable years 1989 and 1990.[8]  It is petitioners' position that "an admission [in the reopening memorandum and the attachment thereto] by the Commissioner's employee [the revenue agent] that an error occurred [in 2002 when the IRS sent Mr. Garavaglia a no-change letter with respect to each of his taxable years 1987 through 1991] in conjunction with an excessive period of time should prove" a ministerial error

---

[7]See supra note 2.

[8]See supra note 3.

[*41] within the meaning of section 6404(e)(1)(A).  In support of their position,

petitioners allege:

> Since the * * * [plea] Agreement in 1998, and the payment of taxes in
> the amount of $207,000 [Mr. Garavaglia's $207,000 remittance as
> part of his plea agreement in the U.S. District Court] (in addition to
> full payment in 2013), the Respondent has committed a multitude of
> errors that range from borderline fraud (destruction of evidence) to
> negligence.  The delays caused were unreasonable and were prevent-
> able if the Respondent used caution and followed procedure.
> * * * The facts are that the Respondent committed errors and omis-
> sions and it resulted in delays.  * * *[T]he Court should abate or
> adjust the interest [with respect to their taxable years 1989 and 1990].
> * * *

We note initially that in advancing their position under section

6404(e)(1)(A) petitioners rely on various factual contentions regarding, inter alia,

alleged errors and delays by respondent, most of which are not supported by the

fully stipulated record in this case.  To the extent that in advancing their position

petitioners rely on any factual contentions that are not supported by the record, we

have disregarded those contentions.

Section 6404(e)(1)(A) permits the Commissioner to abate interest on any

deficiency attributable in whole or in part to any error or delay by an officer or an

employee of the IRS, acting in his or her official capacity, in performing a ministe-

[*42] rial act.[9] As pertinent here, section 6404(e)(1) provides that for purposes of section 6404(e)(1)(A) "an error or delay shall be taken into account only if no significant aspect of such error or delay [described in section 6404(e)(1)] can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency [to which section 6404(e)(1)(A) refers]".

The Secretary of the Treasury issued temporary regulations under section 6404(e) which apply for petitioners' taxable years 1989 and 1990[10] and which provided the following definition of the term "ministerial act" for purposes of section 6404(e)(1):

> (b) Ministerial act--(1) Definition.  The term "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the pro-

---

[9]Congress amended, inter alia, sec. 6404(e)(1)(A) in the Taxpayer Bill of Rights 2, Pub. L. No. 104-168, sec. 301, 110 Stat. at 1457 (1996), effective for interest accruing with respect to, inter alia, deficiencies for taxable years that began after July 30, 1996.  Sec. 6404(e)(1)(A) as amended, which does not apply for petitioners' taxable years 1989 and 1990, permits the Commissioner to abate interest on "any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act".

[10]The Secretary of the Treasury promulgated final regulations under sec. 6404(e) which do not apply for petitioners' taxable years 1989 and 1990 but which apply for taxable years that began after July 30, 1996.  See sec. 301.6404-2(d), Proced. & Admin. Regs.

**[*43]** cessing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place. A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act.

Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).

We consider petitioners' contention that the reopening memorandum shows that respondent made a ministerial error in 2002 within the meaning of section 6404(e)(1)(A) when respondent issued a no-change letter to Mr. Garavaglia and one or more related corporations with respect to taxable years 1987 through 1991. In the attachment to his reopening memorandum, the revenue agent states:

> A no change letter was issued in 2002 for the years 1987 through 1991 for Mr. Garavaglia and the related corporations, including C & G. This no change has since been determined to be inaccurate as the analysis conducted by the IRS was incorrect.

> Records have since been re-reviewed which indicate that unreported income exists with regard to C & G. * * * The AUSA reviewed bank records and other books and records to ascertain the amounts[.] * * * According to the financial analysis conducted by the AUSA, the corporations controlled by Mr. Garavaglia benefited [sic] greatly from the insurance scheme he was operating.

> *        *        *        *        *        *        *

> A review of the Garavaglia 1040 returns for 1989 and 1990, reveal that the taxpayer did not pick up this income as a flow-through from C & G.

**[\*44]** On the record before us, we find that respondent's sending in 2002 a no-change letter to Mr. Garavaglia and certain related corporations to which the revenue agent referred in his reopening memorandum was a substantive error, not a ministerial error within the meaning of section 6404(e)(1)(A) and the temporary regulations thereunder.

On the record before us, we find that petitioners have failed to carry their burden of establishing that the interest remaining at issue is attributable in whole or in part to any error or delay by an officer or employee of the IRS, acting in his or her official capacity, in performing a ministerial act. On that record, we further find that petitioners have failed to carry their burden of establishing that respondent abused respondent's discretion in determining not to abate under section 6404(e)(1)(A) the interest remaining at issue that respondent assessed with respect to each of petitioners' taxable years 1989 and 1990.[11]

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

---

[11]See supra note 3.

**[\*45]** To reflect the foregoing and concessions of the parties,

An appropriate decision will be

entered.

[*46]                                APPENDIX

**Attachment to Letter 3193 - CHARLES L & MARYANN GARAVAGLIA**

| Type of tax | Period | Date of Levy Notice | Date CDP Request was Received |
|---|---|---|---|
| 1040 | 12/1989 | 07/01/2013 | 07/08/2013 |
| 1040 | 12/1990 | 07/01/2013 | 07/08/2013 |
| Fraud Penalty | 12/1989 | 07/01/2013 | 07/08/2013 |
| Fraud Penalty | 12/1990 | 07/01/2013 | 07/08/2013 |

## *Summary and Recommendation*

Taxpayers filed a request for a Collection Due Process hearing under Internal Revenue Code (IRC) section 6330 following receipt of Letter 1058 Notice of Intent to Levy and Notice of Your Right to a Hearing. The request was timely.

The determination of appeals in this case is as follows: Based on the available information, the legal and procedural requirements have been met; the proposed enforcement action (levy) is appropriate and sustained. Appeals also made the determination to reject the submitted Offer in Compromise (OIC) dated 08/02/2013 for the assessed 1040 liabilities and 08/27/2013 for the assessed fraud penalties as a collection alternative.

## *Brief Background*

The CDP notice was for your 1989 and 1990 form 1040 income tax liabilities. A review of computer transcripts indicate the liability for the periods at issue resulted from self assessed returns followed by additional assessments dated 5/8/2013 resulting from the audit of the

[*47] periods at issue. Fraud penalty was also assessed for both periods against Mr. Garavaglia on 05/29/2012. You did not have enough withholding or estimated tax payment credit to satisfy the liabilities. IRS sent notices that requested the payment of the balance due. The letter 1058 above was issued with the deadline of 07/01/2012, a completed form 12153, Request for a Collection Due Process or Equivalent Hearing, was received on 07/08/2013.

On 07/29/2013 a hearing appointment letter was issued scheduling a face to face meeting for 08/20/2013. This letter advised that you provide the following documents before the conference:
- The completed form 656 with the required attachments.
- Current income and expenses statement for your businesses with the list of all assets, the encumbrance and ownership interest information
- Current quarterly statement for all investment and IRA accounts and the bank statements for the last 3 months

On 08/20/2013 your representative EVAN H KAPLOE called Settlement Officer (SO) Diakite to discuss case related issues and it was decided that the face to face meeting will be held on 08/27/2013.

On 08/27/2013 your representative Evan Kaploe met with SO Diakite at the scheduled time to conduct the conference for the request due process hearing. The appeals' process as it relates to due process cases was explained. The SO Informed the representative that the review of the administrative files reveals that the compliance function followed and met all legal and procedural requirements when the letter 1058 was issued. Your representative was informed that that the review of the form 12153 reveals a request for an OIC as a collection alternative and the completed form 656-L was submitted, but the liability issue was previously reviewed and affirmed by both the tax court and the sixth circuit court. Based on those facts, the SO informed that the liability issue is a precluded issue during this CDP hearing. As the result, appeals will not consider the submitted form 656-L. Your representative agreed and submitted another completed

[*48] form 656 based on DATC for the joint 1040 liabilities.  He promised to submit the processing fee and the 20% initial payment for the joint offer and another form 656 for the fraud penalties assessed against Mr. Garavaglia with all required attachments on 09/03/2013.

## *Discussion and Analysis*

### Verification of Legal and Procedural Requirement

- With the best information available, the requirements of various applicable law or administrative procedures have been met.
- The assessments were made on the applicable Collection Due Process notice periods per IRC section 6201 and 6653(b).
- IRC section 6321 provides for a statutory lien when a taxpayer neglects or refuses to pay a tax liability after notice and demand.
- IRC section 6303 requires notice and demand be given within 60 days, after making assessment of a tax.  Notice can be sent by mail to the taxpayer's last known address.  Transcripts show this notice was sent to you via regular mail for the periods at issue.
- There was a balance due when the Collection Due Process notice was issued per IRC sections 6322 and 6331(a).
- IRC section 6331(d) requires that the Service notify a taxpayer at least 30 days before a Notice of Levy can be issued.
- I IRC section 6330(a) provides that no levy may be made unless the Service notifies a taxpayer of the opportunity for a hearing with Appeals.  A final notice of intent to levy was mailed to you on **07/01/2013**.
- The statute for collection has been suspended since **07/08/2013**.

• You were given the opportunity to have a hearing and raise any relevant issue relating to the unpaid tax or the proposed levy action at the hearing in accordance with IRC section 6330(c).

• The Settlement Officer assigned to hear your case has had no prior involvement with respect to these liabilities either in a previous Appeals hearing or in compliance activities.

• The Compliance Function followed all legal and procedural requirements and the proposed levy action is appropriate under the circumstances.

**Issued Raised by the Taxpayer:**

**You checked an Offer in Compromise (OIC) on the form 12153 as a collection alternative:**

You submitted the completed form 656 with attachments to compromise the 1040 liabilities on 08/02/2013 and for the assessed fraud penalties on 08/27/2013 pursuant to IRC Section 7122. The offers, based upon doubt as to collectability, were submitted for the following assessments:

• For the joint 1040 liabilities: The offer was a joint offer in the amount of $370,570.75, an initial payment of $77,673.48 was made when the offer was submitted and the remaining $310,693.92 will be paid a month after acceptance.

• For the assessed fraud penalties: This offer was submitted for Mr. Garavaglia only. It is a lump sum offer of $158,814.75, an initial payment of $31,762.95 was made when the offer was submitted and the remaining $127,051.80 will be paid two months after acceptance.

During the review process, additional information was provided to evaluate the ability to pay. Appeals' review showed that the reasonable collection potential (RCP) is more than the offered amount. The

[*50] provided financial statement shows that you have the ability to fully satisfy the liabilities based on the following facts:

- The total equity in the assets is over $3,000,000.00
- The total liability as of 12/06/2013 is $1,390,942.49

In addition, appeals reviewed your files in order to determine if there were any exceptional circumstances that warrant accepting these offers, but there were none. Per the Internal Revenue Manual **5.8.1.1.3 (4),** unless special circumstances exist, offers will not be accepted if it is believed that the liability can be paid in full as a lump sum, or by installment payments extending through the remaining statutory period for collection, or other means of collection.

Based on the facts as stated above, your representative was informed that the offers will be rejected because you have the financial ability to fully satisfy the liabilities at issue.

**Collection Alternative:**

No acceptable collection alternative was requested.

**Challenges to the Existence or Amount of the Liability:**

Your representative tried to raise the liability issue by submitting the completed Form 656-L and he also indicated on the attachment to the Form 656-L that the assessed interest is being challenged because neither the decision document nor the computation submitted to the Tax Court contemplate the assessment or application of interest per the IRM 35.8.2.5. Per your representative, the decision document and computation clearly demonstrate that interest was not included. Your representative went on to say that you were not put on the requisite notice that interest would be assessed or accrued on your liabilities. He also added that the decision document nowhere mentions that interest will accrue on the liabilities. SO Diakite informed your representative that the agreement was entered under rule 155, it was not a stipulated decision or an agreed case. The SO also informed that interests are statutory and should have been expected.

**[*51]** Based on the above information, your representative was informed that both the Tax Court and the Sixth Circuit Court addressed the liability issue which included the underlined interest. As a result, the liability issue is a precluded issue during this hearing and the submitted Form 656-L will not be considered by appeals.

**<u>No other issue was raised.</u>**

**<u>Balancing Efficient Collection and Intrusiveness</u>**

Based on the case file and the information secured during the conference, the proposed levy action was appropriate under the circumstances. No acceptable collection alternative was raised. The Compliance Division may continue to investigate and collect this debt. This action is necessary to provide for the efficient collection of the taxes despite the potential intrusiveness of enforced collection.